MARY LOU MATEY *v.* ESTATE OF SARAH
DEMBER ET AL.
(SC 16390)

Borden, Katz, Palmer, Sullivan and Vertefeuille, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of argument.

458

Argued December 7, 2000—officially released June 26, 2001

*Michael J. Belzer*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellant (defendant second injury fund).

*Alexander H. Schwartz*, with whom was *Laurence V. Parnoff*, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. This case involves a claim under the Workers' Compensation Act, General Statutes § 31-275 et seq. (act). The defendant[1] second injury fund (fund) raises the following issues on appeal from a ruling of the compensation review board (board):[2] (1) whether the board improperly concluded that the workers' compensation commissioner (commissioner) had jurisdiction to order the fund to make payments to an injured employee (plaintiff) pursuant to General Statutes § 31-355 (b),[3] when the plaintiff's employer had died after receiving notice of the injury, and the plaintiff

---

[1] Also named as defendants were the estate of Sarah Dember and the two coexecutors of the estate. While those defendants are discussed in the factual portion of this opinion and in our discussion of the merits, neither is involved in this appeal.

[2] At the time the proceedings in this case were initiated, the compensation review division was the appropriate body to which appeals from workers' compensation commissioners were brought. The compensation review division was changed to the compensation review board in 1991. See Public Acts 1991, No. 91-339. For purposes of clarity, references herein are to the board.

[3] General Statutes § 31-355 provides: "(a) The commissioner shall give notice to the Treasurer of all hearing of matters which may involve payment from the Second Injury Fund, and may make an award directing the Treasurer to make payment from the fund.

"(b) When an award of compensation has been made under the provisions of this chapter against an employer who fails or is unable to pay medical and surgical aid or hospital and nursing service required under this chapter or any type of compensation for disability, or both, whether for total or partial disability of a permanent or temporary nature, death benefit, funeral expense, or any adjustment in compensation required by this chapter, and whose insurer fails or is unable to pay the compensation, such compensation shall be paid from the Second Injury Fund. The commissioner, on a finding of failure or inability to pay compensation, shall give notice to the Treasurer of the award, directing the Treasurer to make payment from the fund. Whenever liability to pay compensation is contested by the Treasurer, the Treasurer shall file with the commissioner, on or before the twenty-eighth day after he has received an order of payment from the commissioner, a notice in accordance with a form prescribed by the chairman of the Workers' Compensation Commission stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the specific grounds on which the right to

did not present her claim to the executors of her employer's estate within the time ordered by the Probate Court pursuant to General Statutes § 45a-395;[4] (2)

compensation is contested. A copy of the notice shall be sent to the employee. The commissioner shall hold a hearing on such contested liability at the request of the Treasurer or the employee in accordance with the provisions of this chapter. If the Treasurer fails to file the notice contesting liability within the time prescribed in this section, the Treasurer shall be conclusively presumed to have accepted the compensability of such alleged injury or death from the Second Injury Fund and shall have no right thereafter to contest the employee's right to receive compensation on any grounds or contest the extent of the employee's disability.

"(c) The employer and the insurer, if any, shall be liable to the state for any payments made out of the fund in accordance with this section or which the state has by award become obligated to make from the fund, together with cost of attorneys' fees as fixed by the court. If reimbursement is not made, or a plan for payment to the fund has not been agreed to by the Treasurer and employer, within ninety days of any payment from the fund, the Attorney General shall bring a civil action, in the superior court for the judicial district where the award was made, to recover all amounts paid by the fund pursuant to the award, plus double damages together with reasonable attorney's fees and costs as taxed by the court. Any amount paid to the Treasurer by the employer or insurer after the filing of an action, but prior to its completion, shall be subject to an interest charge of eighteen per cent per annum, calculated from the date of original payment from the fund.

"(d) Any recovery made under this section, including any recovery for costs or attorney's fees, shall be paid into the fund. Any administrative or other costs or expenses incurred by the Attorney General in connection with carrying out the purposes of this section, including the hiring of necessary employees, shall be paid from the fund. The Treasurer shall adopt regulations, in accordance with the provisions of chapter 54, which describe what constitutes a proper and sufficient 'plan for payment to the fund' for the purposes of this section.

"(e) Notwithstanding the provisions of subsections (a) to (d), inclusive, of this section, whenever the employer's insurer has been determined to be insolvent, as defined in section 38a-838, payments required under this section shall be the obligation of the Connecticut Insurance Guaranty Association pursuant to the provisions of sections 38a-836 to 38a-853, inclusive."

[4] General Statutes § 45a-395 provides: "(a) The Court of Probate may order the citation of the creditors of the deceased whose estate is in settlement before it to bring in their claims against such estate within such time, not more than twelve months nor less than three months, from the date of such order, as it limits, by publishing a notice to that effect in a newspaper having a circulation in the probate district in which such estate is in settlement and by such further notice as the court deems necessary.

whether the board improperly denied the fund's claim that the award must be reduced by the amount of the plaintiff's third party recovery pursuant to General Statutes (Rev. to 1983) § 31-293;[5] and (3) whether the board

"(b) If any creditor fails to exhibit his claim to the fiduciary or his attorney as directed in such order, within the time limited by such order, he shall be barred of his demand against such estate; but, when a right of action accrues after the time limited for the presentation of claims, it shall be exhibited within four months after such right of action accrues and shall be paid out of the estate remaining after the payment of the debts exhibited within the time limited.

"(c) The court may, for cause shown upon hearing after public notice, limit a further time for the presentation of claims not exceeding the period which it might have originally limited. The court may, if any creditor, through no default of his own, has failed to present his claim within the time limited, for cause shown upon hearing after public notice, extend the time for such creditor to present his claim not more than thirty days beyond the period which it might have originally limited.

"(d) Failure of a clerk of the Court of Probate to cause proper notice limiting the time for presentation of claims against such estates to be published as required by the probate order within ten days from the issuance of such order by the Court of Probate shall be deemed a noncompliance with such order and shall be cause for a further order of limitation to creditors.

"(e) The amount of a claim may not be increased after the time for the presentation of such claim has expired.

"(f) A notice of claim shall not be required under this section of any claim founded in tort or of any claim on which an action is pending in any court against the decedent at the time of his death.

"(g) If any person against whom a claim founded in tort exists dies on the day the applicable statute of limitation expires or within thirty days prior to such day, a period of thirty days from the appointment of his executor or administrator shall be allowed within which to commence suit."

At the time of the plaintiff's accident, this section was codified at General Statutes § 45-205. The section was transferred to § 45a-395 in the 1991 revision to the General Statutes. For purposes of clarity, we refer herein to the current codification.

[5] General Statutes (Rev. to 1983) § 31-293 provides: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect hereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become

improperly ruled that the fund was not entitled to a hearing on its notice of intention to contest liability pursuant to § 31-355 (b), when the fund had participated in all of the proceedings before the commissioner.

This case is marked by a truly Byzantine, sixteen year procedural history. A thorough review of that history

obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee. If either such employee or such employer brings such action against such third person, he shall forthwith notify the other, in writing, by personal presentation or by registered or certified mail, of such fact and of the name of the court to which the writ is returnable, and such other may join as a party plaintiff in such action within thirty days after such notification, and, if such other fails to join as a party plaintiff, his right of action against such third person shall abate. In any case in which an employee brings an action against a third party in accordance with the provisions of this section, and the employer is a party defendant in such action, the employer may join as a party plaintiff in such action. The bringing of any such action against an employer shall not constitute notice to such employer within the meaning of this section. If such employer and employee join as parties plaintiff in such action and any damages are recovered, such damages shall be so apportioned that the claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of such recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting such recovery. The rendition of a judgment in favor of the employee or the employer against such party shall not terminate the employer's obligation to make further compensation, including medical expenses, which the compensation commissioner thereafter deems payable to such injured employee. If the damages, after deducting the employee's expenses as provided above, are more than sufficient to reimburse the employer, damages shall be assessed in his favor in a sum sufficient to reimburse him for his claim, and the excess shall be assessed in favor of the injured employee. No compromise with such third person by either employer or employee shall be binding upon or affect the rights of the other, unless assented to by him. For the purposes of this section the employer's claim shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury. The word 'compensation,' as used in this section, shall be construed to include not only incapacity payments to an injured employee and payments to the dependents of a deceased employee, but also sums paid out for surgical, medical and hospital services to an injured

is, unfortunately, necessary for the resolution of the parties' claims.

On August 9, 1984, the plaintiff, Mary Lou Matey, was allegedly injured in an automobile accident during the course of her employment by Sarah Dember. Dember, an ailing elderly woman, had employed the plaintiff as a live-in home care aide. The plaintiff notified Dember of the accident on the day that it occurred, and Dember acknowledged that notice in a letter dated August 14, 1984, to the plaintiff's attorney.

Dember died on October 13, 1984. The plaintiff was informed of Dember's death at that time. The Probate Court for the district of Waterbury subsequently ordered that all claims against Dember's estate be presented to the executors of the estate on or before February 14, 1985, or be barred. The order was published in the Waterbury Republican on November 22, 1984. The probate record for the estate was ultimately closed on March 20, 1986.

On July 8, 1985, pursuant to General Statutes (Rev. to 1983) § 31-294,[6] the plaintiff filed a notice of claim

employee, the one thousand dollar burial fee provided by law and payments made under the provisions of sections 31-312 and 31-313."

[6] General Statutes (Rev. to 1983) § 31-294 provides in relevant part: "Any employee who has sustained an injury in the course of his employment shall forthwith notify his employer, or some person representing his employer, of such injury; and, on his failure to give such notice, the commissioner may reduce the award of compensation proportionately to any prejudice which he finds the employer has sustained by reason of such failure; but the burden of proof with respect to such prejudice shall rest upon the employer. No proceedings for compensation under the provisions of this chapter shall be maintained unless a written notice of claim for compensation is given within one year from the date of the accident . . . . Such notice may be given to the employer or the commissioner and shall state, in simple language, the date and place of the accident and the nature of the injury resulting therefrom, or the date of the first manifestation of a symptom of the occupational disease and the nature of such disease, as the case may be, and the name and address of the employee and of the person in whose interest compensation is claimed. . . ."

and request for a hearing with both the commissioner and the attorney representing the executors of Dember's estate. The plaintiff testified in a hearing before the commissioner that she had had a good rapport with Dember and her family, that Dember had died while the plaintiff was hospitalized as a result of the accident, and that, after leaving the hospital several weeks after Dember had died, "she was not thinking about suing." The plaintiff also testified that she had notified her counsel about the accident while she was in the hospital. She stated that she had been "hesitant about [filing the claim] then," but, at some point close to one year after the date of the accident, her attorney had indicated to her that, if she were going to make a claim, she would have to make it before the statute of limitations expired. In a letter dated July 16, 1985, counsel for the executors of Dember's estate notified the commissioner that the executors denied that the plaintiff had been an employee of Dember, and that the claim was barred by the order of the Probate Court.

The record is unclear on the matter, but we assume that the commissioner, based on the executors' denial of the estate's liability under the act, made a preliminary determination that there was some probability that the estate would not pay an award entered against it. Therefore, the commissioner notified the fund of the plaintiff's claim. The fund had an interest in the case because, pursuant to § 31-355, if Dember's estate failed to pay an award, the commissioner could direct the fund to pay the award. The date of the fund's first notification of the claim is not clear from the record, but notice of an informal hearing on the claim was mailed to the fund on August 28, 1985. While the workers' compensation claim was pending, the plaintiff also brought an action in the Superior Court against the city of Waterbury in connection with the accident. See *Matey* v. *Waterbury*,

24 Conn. App. 93, 585 A.2d 1260, cert. denied, 218 Conn. 908, 588 A.2d 1383 (1991).

During 1985 and 1986, the commissioner held hearings on the plaintiff's claim, at which counsel for the fund argued that the commissioner had no subject matter jurisdiction over the claim because the plaintiff had failed to file a claim with the executors of Dember's estate within the period ordered by the Probate Court and, therefore, any cause of action against the executors was barred. On September 26, 1986, the commissioner issued its finding and award in which it found that "[n]o claim was made by the [the plaintiff] against the estate within the time set by the Probate Court for the presentation of claims." The commissioner rejected the fund's jurisdictional argument, however, and ordered the estate to pay benefits to the plaintiff at the weekly rate of $240. The fund then filed a petition for review of the finding and award with the board, pursuant to General Statutes (Rev. to 1985) § 31-301 (a).[7] In its reasons of

---

[7] General Statutes (Rev. to 1985) § 31-301 (a) provides: "At any time within ten days after entry of such award by the commissioner, after a decision of the commissioner upon a motion or after an order by the commissioner according to the provisions of section 31-299b, either party may appeal therefrom to the [board] by filing in the office of the commissioner from which such award or such decision on a motion originated an appeal petition and five copies thereof. Such commissioner within three days thereafter shall mail such petition and three copies thereof to the chairman of the [board] and a copy thereof to the adverse party or parties. Such appeal shall be heard by a panel of the [board], except that no commissioner may sit in review of an award or decision rendered by him. The [board] shall hear the appeal on the record of the hearing before the commissioner, provided, if it is shown to the satisfaction of the division that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, the [board] may hear additional evidence or testimony. Upon the final determination of the appeal by the [board], it shall issue its decision, affirming, modifying or reversing the decision of the commissioner. The decision of the [board] shall include its findings and award and conclusions of law. When any appeal is pending, other than an appeal of a decision based on an occupational disease claim, and it appears to the [board] that any part of the award appealed from is not affected by the issues raised by such appeal, the [board] may, on motion or of its own motion, render a judgment directing compliance with any

appeal, the fund again argued, inter alia, that the commissioner had no jurisdiction to order the estate to pay the plaintiff when the claim was barred by the order of the Probate Court.

On June 14, 1988, the board issued its opinion, holding that neither the commissioner nor the board had jurisdiction to construe probate statutes, but that the board had jurisdiction to determine whether the claim complied with the act. Accordingly, the board affirmed the commissioner's ruling on the fund's jurisdictional argument. The board also found, however, that there was insufficient evidence in the record on which to base a finding of equivalent monetary value for room and board that Dember had furnished to the plaintiff and, accordingly, remanded the claim to the commissioner for a hearing on that matter.

portion of such award not affected by such appeal; or if the only issue raised by such appeal is the amount of the average weekly wage for the purpose of determining the amount of compensation, as provided in section 31-310, the commissioner shall, on motion of the claimant, direct the payment of such portion of the compensation payable under his award as is not in dispute, if any, pending final adjudication of the disputed portion thereof. In all appeals in which one of the parties is not represented by counsel, and in which the party taking the appeal does not prosecute the case within a reasonable time from the date of appeal, the [board] may, of its own motion, affirm, reverse or modify the award. When an appeal is taken to the [board], the clerk thereof shall notify the commissioner from whose award the appeal was taken, in writing, of any action of the [board] thereon and of the final disposition of such appeal, whether by judgment, withdrawal or otherwise, and shall upon the decision of the appeal, furnish the commissioner with a copy of such decision. Whenever any appeal is pending, if it appears to the [board] that justice so requires, the [board] shall order a certified copy of the evidence for the use of the employer, the employee or both, and such certified copy shall be made a part of the record on such appeal. The procedure in appealing from an award of the compensation commissioner shall be the same as the procedure employed in an appeal from the superior court to the supreme court, where applicable. Acting together as a [board], the commissioners shall adopt regulations in accordance with the provisions of chapter 54 to establish rules, methods of procedure and forms as they deem expedient for the purposes of this chapter."

On July 5, 1988, the fund appealed from the board's ruling to the Appellate Court pursuant to General Statutes § 31-301b.[8] This court then transferred the appeal to itself. Ultimately, this court dismissed the appeal, concluding that it was premature because the board's remand order had directed further evidentiary proceedings necessary for the determination of the amount of the award. See *Matey* v. *Estate of Dember*, 210 Conn. 626, 631, 556 A.2d 599 (1989).

On October 2, 1990, the commissioner, in compliance with the board's remand order, issued a finding and award in which it found that the plaintiff's weekly compensation rate was $276.66. The finding and award did not direct any person or entity to make payment to the plaintiff. We presume, however, that it was intended simply to clarify the September 26, 1986 finding and award, which ordered payment by Dember's estate.

During 1990, the plaintiff settled her third party claim against the city of Waterbury for $386,791.78, and on December 4, 1990, withdrew that action. Prior to the settlement and withdrawal, the fund had filed a motion to intervene in the action, which the trial court had denied. After the trial court also had denied the fund's motion to open and set aside the denial of its motion to intervene, the fund appealed to the Appellate Court, which, on February 12, 1991, reversed the trial court's decision and remanded the case with direction to grant the motion, subject to the trial court's discretion in restoring the case to the active docket. See *Matey* v. *Waterbury*, supra, 24 Conn. App. 99.

---

[8] General Statutes § 31-301b provides: "Any party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal the decision of the Compensation Review Board to the Appellate Court."

At the time of the fund's appeal in 1988, § 31-301b referred to the compensation review division. See footnote 2 of this opinion. For purposes of clarity, we refer herein to the current revision of the statute.

On February 25, 1991, the commissioner issued an order to the fund to pay the plaintiff temporary total benefits in the amount of $115,970.38, for the period from August 9, 1984, through March 1, 1991. The fund then filed with the board a petition for review of that order. Two days after filing the petition for review, the fund filed a motion to open the order, claiming that there had been no hearing prior to the order to determine the amount of temporary total benefits due to the plaintiff. The fund also noted that the order had been prepared by the plaintiff's attorney on his firm's letterhead, but that it had not been sent to the fund prior to being sent to the commissioner. Additionally, the fund claimed that there had been an informal hearing on December 23, 1990, at which the fund had requested a formal hearing on the plaintiff's request for an order for payment from the fund pursuant to § 31-355, and at which the fund had renewed its jurisdictional claims. At the informal hearing, the fund had also raised the issue of the plaintiff's recovery from the settlement of her third party claim against the city of Waterbury.

On March 8, 1991, the commissioner granted the fund's motion to open. The board subsequently dismissed the fund's petition for review as moot in light of the commissioner's granting of the motion to open.

Over the next several years, the commissioner held a number of hearings on the claim, at which the fund continued to raise its jurisdictional and third party recovery claims. Meanwhile, on January 6, 1992, on remand from the Appellate Court, the trial court restored to the docket the plaintiff's action against the city of Waterbury, and on May 4, 1992, the court granted the fund's motion to intervene in that action. On June 16, 1992, the fund withdrew its intervening complaint.

On July 26, 1995, the commissioner issued its third finding and award. The finding and award incorporated

the commissioner's September 26, 1986 finding and award, in which the commissioner had rejected the fund's jurisdictional claims, and, further, ordered the fund to pay $210,116.48 in total temporary benefits, plus medical expenses, to the plaintiff. The July 26, 1995 ruling did not address the fund's third party recovery claim against the city of Waterbury.

On August 4, 1995, the fund filed a motion to open the July 26, 1995 finding and award. The fund raised a number of issues in its motion, including, once again, the jurisdictional and third party recovery claims. On August 18, 1995, the commissioner granted the motion to open on grounds not relevant to this appeal, and, in the same ruling, issued orders correcting the benefit rates set forth in its July 26, 1995 finding and award. The fund then filed a motion to open the August 18, 1995 order, again raising the jurisdictional and third party recovery claims. The commissioner denied that motion on September 1, 1995. On September 7, 1995, the fund filed with the board a petition for review of the commissioner's July 26, 1995, August 18, 1995, and September 1, 1995 rulings. On December 18, 1995, the plaintiff moved to dismiss the fund's appeal from both the July 26 and August 18, 1995 orders as untimely, and its appeal of the August 28, 1995 order as being without legal basis.

Another year passed, and on January 10, 1997, the board issued its ruling on the fund's petition for review. The board ruled that the plaintiff's motion to dismiss had been untimely, and that certain defects in the fund's appeal were therefore waived. The board also concluded that, because the fund had not appealed from the July 26, 1995 finding and award,[9] but, rather, from

[9] This conclusion does not appear to be supported by the record. The fund's September 7, 1995 petition for review clearly indicates that the fund was seeking review of the commission's July 26, 1995 finding and award.

the denial of the motion to open, the claimed errors could not be reviewed, and the board was therefore limited to determining whether the commissioner had abused his discretion in denying the motions to open. The board concluded that there was no such abuse of discretion, and that the jurisdictional and third party recovery issues raised in the motions to open "could have been raised long, long ago."[10]

The board also concluded, however, that the commissioner did not have authority under § 31-355 (a) to order payment from the fund until an award was made against the plaintiff's employer, and the employer failed to pay the compensation.[11] Accordingly, the board remanded the case "for the limited but necessary procedural purpose of entering an award against the decedent employer's estate before the trial commissioner may invoke [f]und liability under § 31-355 (a)." The board concluded, based on the appearance of the executors of the estate at formal hearings,[12] that the executors had consented to the jurisdiction of the commissioner and that an award could be entered against the estate.

On January 30, 1997, the fund filed a motion to reargue and open the board's January 10, 1997 ruling, again raising the jurisdictional and third party recovery

[10] Again, the board's suggestion that the fund had not raised the issues in a timely manner does not appear to be supported by the record. The fund continually had raised these issues from the time of its first involvement in the case.

[11] Again, the basis for the board's finding that no award had been entered against the employer is not clear from the record. The original finding and award dated September 26, 1986, had included an order directing Dember's estate to pay benefits to the plaintiff. The supplemental finding and award dated October 2, 1990, had been issued on remand from the board merely to clarify the amount of benefits to be paid pursuant to the September 26, 1986 order. The July 26, 1995 finding and award incorporated the September 26, 1986 and October 2, 1990 orders and, therefore, implicitly included an order against the estate.

[12] We note, however, that none of the formal hearing transcripts in the record before this court reflects appearances by the executors.

claims. The board denied the motion to open, and the fund then filed a reservation of its right of appeal, noting that, because the board had remanded the claim to the commissioner, no final judgment had been entered, and, therefore, it could not appeal the January 10, 1997 ruling to the Appellate Court.

On May 23, 1997, on the remand from the board, the commissioner issued a supplemental finding and award incorporating the commissioner's July 26, 1995 finding and award, and directing Dember and Dember's estate to pay the award. On June 2, 1997, the commissioner ordered the fund to pay the plaintiff. Pursuant to § 31-355 (b), the fund filed a form 43 notice of intention to contest liability (form 43) on June 4, 1997, once again raising the jurisdictional and third party recovery claims. The fund also filed a reservation of right of appeal with respect to the June 2, 1997 award, pending resolution of a hearing on its notice of intention to contest liability.

On November 6, 1997, the plaintiff filed a motion to dismiss the fund's form 43 notice on the grounds that it was without legal or factual basis. The fund filed a brief in support of its form 43 notice, again arguing the jurisdiction and third party recovery issues, and claiming that it was entitled to a hearing on its liability pursuant to § 31-355 (b). On June 18, 1998, in a summary finding and order, the commissioner granted the plaintiff's motion to dismiss. On June 26, 1998, the fund filed with the board a petition for review of the commissioner's June 2, 1997 and June 18, 1998 orders. It filed its reasons for appeal on July 24, 1998, again claiming that the commissioner had no jurisdiction over the claim, and that the fund was entitled to a hearing on its liability.

The plaintiff filed a motion to dismiss the petition for review as untimely on August 19, 1998. In a supplemental motion, the plaintiff argued that the fund was

required to raise the jurisdictional issue within ten days of the October 2, 1990 finding and award. On December 2, 1998, the fund filed a brief in support of its appeal, in which it again raised both the jurisdictional and the third party recovery issues.

On July 7, 1999, the board issued an opinion in which it concluded that the fund's June 26, 1998 appeal from the June 2, 1997 ruling was not timely, and affirmed the commissioner's June 18, 1998 order dismissing the fund's form 43 notice. The board also concluded that, because the fund had participated in all of the proceedings prior to the commissioner's order that the fund pay the plaintiff, it was not entitled to a de novo hearing on its form 43 notice of intention to contest liability pursuant to § 31-355 (b).

The fund appealed from the board's July 7, 1999 decision to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. The fund claims on appeal that the board improperly affirmed the commissioner's rulings that: (1) the commissioner had jurisdiction to enter an award against Dember's estate when claims against the estate were barred by the nonclaim statute; (2) the fund was not entitled to a credit for the plaintiff's third party recovery in her action against the city of Waterbury; and (3) the fund was not entitled to contest the order to make payments pursuant to § 31-355 (b).

I

As a preliminary matter, we address the plaintiff's argument that the jurisdictional and third party recovery claims were not properly preserved. We note that the board's July 7, 1999 decision, although not entirely clear on the matter, suggests that the board may have rejected these claims on procedural grounds because the fund had failed to appeal certain rulings by the

commissioner in a timely manner. In the proceedings before the commissioner and the board, the fund was criticized repeatedly for continually filing motions to open rather than appealing directly to the board from the commissioner's various findings and awards. For the following reasons, we conclude that the fund is not procedurally barred from raising the jurisdictional claim or the third party recovery claim.

First, we note that the commissioner granted the first two of the fund's five motions to open. Thus, in those cases, the fund could not have appealed to the board because there was no final finding and award from which to appeal.

Second, regarding the fund's third and fourth motions to open, we note that the third motion was timely and appropriate, and that, although the fourth motion to open was arguably untimely, the board effectively ordered that the motion be granted, thus rendering moot any claim that it was barred.[13]

Third, we reject the board's suggestion that the fund's form 43 notice raised the jurisdictional issue in an untimely manner, and that the fund's June 26, 1998 appeal of the June 2, 1997 order to the fund to make payments, which was the subject of the form 43 notice, was also untimely. The form 43 was filed two days after the commissioner had entered the June 2, 1997 order, and the fund previously had raised the jurisdictional

---

[13] When the commission denied the fund's third motion to open, the fund filed a fourth motion to open that denial as well as the underlying orders addressed in the third motion. The commission denied the fourth motion to open, and the fund filed a petition for review of that denial with the board. The board found that the petition for review was untimely with respect to the underlying rulings, but, nevertheless, effectively opened those rulings by remanding the case to the commission for the entry of an award against Dember's estate. When the board denied the fund's subsequent motion to open or reargue the remand ruling, the fund filed a reservation of right of appeal, noting that it could not appeal the board's ruling pending a final judgment by the commission on remand.

claim in every single proceeding before both the commissioner and the board. The fund also filed a reservation of right of appeal with respect to the order pending a hearing on its form 43 notice of intention to contest liability. While the form 43 notice was pending, the June 2, 1997 order was not final. The commissioner did not dismiss the fund's form 43 notice until more than one year after it was filed, at which time the fund filed a timely petition for review of that dismissal and the now final June 2, 1997 order with the board.

Fourth, we reject the plaintiff's argument that the fund abandoned the third party recovery issue by not raising it in its July 24, 1998 reasons for appeal, which were filed in connection with its June 26, 1998 petition for review. The fund explicitly raised the issue in its form 43 notice of intention to contest liability, the dismissal of which was the subject of the fund's June 26, 1998 petition for review, and raised the issue again in its December 2, 1998 brief to the board in support of the petition for review. In addition, the fund had raised this claim in every proceeding before the board from the time of the plaintiff's settlement. We conclude that the claim was therefore preserved.

Finally, we note that, in the proceedings below, the plaintiff repeatedly argued that the fund was barred from raising the jurisdictional claim on appeal to the board because it had not done so within ten days after the October 2, 1990 finding and award. That award, however, was not directed against the fund, but against Dember's estate. An order against the fund was not entered until February 25, 1991, when the fund filed a timely motion to open. Furthermore, even if we were to assume that the fund could have appealed the October 2, 1990 award, we conclude that the plaintiff waived any claim of untimeliness by failing to file a motion to dismiss the fund's motion to open the February 25, 1991 order. See *Murphy* v. *Elms Hotel*, 104 Conn. 351, 353,

133 A. 106 (1926) (failure to take appeal within ten day period set forth in predecessor to General Statutes § 31-301 did not render appeal void, but merely voidable).

On the basis of our careful review of the record, we conclude that the fund properly preserved its jurisdictional and third party recovery claims, and we will review those claims on their merits. Accordingly, we will assume that the board's July 7, 1999 ruling, in which it refused to address the merits of the fund's jurisdictional claim, incorporated its June 14, 1988 ruling, in which the board held that it had no jurisdiction to determine whether the claim was barred by the nonclaim statute.

II

We now address the fund's jurisdictional claim. We first note that the fund's argument assumes that workers' compensation claims are within the category of claims subject to the nonclaim statute, an issue never decided by this court, and not directly addressed by the board or the commissioner. If workers' compensation claims are not subject to the nonclaim statute, the fund's claim must fail. Accordingly, we first address this threshold question.

A

In a situation where an employer has died, "whether [a special limitations statute pertaining to workers' compensation claims] prevails as against the probate statute will depend on the court's interpretation of the two and their interrelationship." 31 Am. Jur. 2d 319, Executors and Administrators § 632 (1989). This court previously has not analyzed the interrelationship of the act and the probate statutes, and our research has revealed only one case where a state court has engaged in such an analysis. In *Lucero* v. *Northrip Logging Co.*, 101 N.M. 420, 420–21, 683 P.2d 1342 (App. 1984), the

defendant employer argued that a claim under New Mexico's workers' compensation statute against a deceased employer was barred by that state's nonclaim statute. The Court of Appeals of New Mexico recognized that its workers' compensation statute "is remedial legislation designed to compensate injured workmen." Id., 422. The court also recognized that "[t]he policy behind the [period of limitations] in the Probate Code is to promote prompt closing of estates . . . ." (Citation omitted.) Id. The court concluded that the New Mexico legislature did not intend to "compromise an injured workman's right to redress in favor of speedy administration of estates" and, therefore, that the claim against the employer's estate was not barred. Id.

We also have recognized that our workers' compensation statute is remedial legislation designed to compensate injured employees; see *Driscoll* v. *General Nutrition Corp.*, 252 Conn. 215, 220–21, 752 A.2d 1069 (2000) (act is remedial statute that should be construed generously to accomplish its purpose of quick and certain compensation of injured employees); and that the purpose of Connecticut's nonclaim statute is the prompt administration of estates. See *Breen* v. *Phelps*, 186 Conn. 86, 101, 439 A.2d 1066 (1982) (purpose of nonclaim statute is to inform administrator of claims that may have to be paid out of estate and thereby to permit speedy settlement of estates). Although our statutes have purposes similar to those of the statutes under review by the court in *Lucero*, for the reasons that follow, we are not persuaded by the reasoning of that case.

First, this court previously has held that "the word claim as used in the [nonclaim] statute means those obligations which are in the broad sense of the term, debts and would include obligations arising out of contract express or implied." (Internal quotation marks

omitted.) Id., 102. "A claim which is characterized as an existing obligation of the decedent and would be paid out of the estate as a whole falls within the statute and must be presented." Id. "The word [claim] was taken to apply also to claims founded in tort . . . until an amendment in 1967 specifically excepted such claims from the statute. Not only debts already due and payable but also those which have not matured must be presented, for these are nevertheless existing obligations and capable of proof." (Citations omitted; internal quotation marks omitted.) Id. "Where the relief requested is the recovery of money out of an estate, to require presentation is consonant with the purpose of the statute." Id., 106.

Not all claims are subject to the nonclaim statute. For instance, tort claims; see General Statutes § 45a-395 (f) in footnote 4 of this opinion; claims to an interest in real estate owned by a decedent at the time of his death and forming part of his estate; *Dennen* v. *Searle*, 149 Conn. 126, 140, 176 A.2d 561 (1961); claims for the recovery of trust assets that have been included in the estate of a decedent; *Breen* v. *Phelps*, supra, 186 Conn. 105; claims for the recovery of specific property; id., 102; and claims for after-accrued claims; id., 103; are not subject to the statute.

We conclude that workers' compensation claims, which: (1) are not tort actions, but a statutory substitute for such actions by employees against employers; see *Perille* v. *Raybestos-Manhattan-Europe, Inc.*, 196 Conn. 529, 540, 494 A.2d 555 (1985); (2) are "founded upon the theory of a contract existing between workman and employer"; *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 145, 93 A. 245 (1915); see also *Stulginski* v. *Cizauskas*, 125 Conn. 293, 297, 5 A.2d 10 (1939) (right to compensation under act "is not one in tort but rests solely on contract"); and (3) can be reduced to a money

judgment; see General Statutes § 31-300;[14] are more similar to contract claims, which are subject to the nonclaim statute, than to the types of claims that are not.

Second, we are not persuaded that the policy underlying the nonclaim statute, namely, the policy favoring the speedy administration of estates, should have less weight when a workers' compensation claim is involved than when the statute is applied to other, equally valid, claims arising in contract. The intent of the framers of the act was to "compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation . . . [and] to establish a speedy, effective and inexpensive method for determining claims for compensation"; (citations omitted; internal quotation marks omitted) *Doe* v. *Yale University*, 252 Conn. 641, 672, 748 A.2d 834 (2000); not, somehow, to privilege such claims over other causes of action in probate proceedings.

Accordingly, we conclude that workers' compensation claims are subject to the nonclaim statute. "Thus, the statute imposes a condition precedent to the enforcement of a right of action [against the employer's executors under the act], the nonfulfilment of which extinguishes the right of action . . . ." *State* v. *Goldfarb*, 160 Conn. 320, 325, 278 A.2d 818 (1971).

### B

We now turn to the substance of the fund's jurisdictional claim. Although neither party presented the claim in this manner, we note that there are actually two jurisdictional questions before us: (1) whether the commissioner has jurisdiction to determine if a claim against an employer's estate is barred by the nonclaim

[14] General Statutes § 31-300 provides in relevant part: "If no appeal from [the commissioner's] decision is taken by either party within ten days thereafter, such award shall be final and may be enforced in the same manner as a judgment of the Superior Court. . . ."

statute; and (2) whether the commissioner has jurisdiction to enter an award against an employer's estate even if the claim against the estate is barred by the nonclaim statute. We note that, if the answer to the second question were "no," it would be likely that the answer to the first question would be "yes," because the commissioner must have jurisdiction to determine whether he has jurisdiction to enter an award. Cf. *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 106, 680 A.2d 1321 (1996) (*Berdon, J.*, dissenting) ("court always has jurisdiction to determine whether it has jurisdiction"). On the other hand, if the answer to the second question is "yes," we must then decide whether there is some reason, other than the need to determine a threshold jurisdictional question, that the commissioner has jurisdiction to determine whether a claim against the estate is barred. Because the answer to the second question could be dispositive of this claim, we address that question first.

We conclude that the commissioner has jurisdiction to enter an award against an employer's estate when the claim against the estate is barred by the nonclaim statute for purposes of establishing the fund's liability. We further conclude that the commissioner has no need to determine whether the claim against the estate is barred before entering such an award.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 24–25, 682 A.2d 99 (1996); *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221

(1995). Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision. *Doe* v. *Stamford*, [241 Conn. 692, 697, 699 A.2d 52 (1997)]; see *Davis* v. *Norwich*, supra, 317. . . . *Fimiani* v. *Star Gallo Distributors, Inc.*, 248 Conn. 635, 641–42, 729 A.2d 212 (1999)." (Internal quotation marks omitted.) *Russell* v. *Mystic Seaport Museum, Inc.*, 252 Conn. 596, 603–604, 748 A.2d 278 (2000).

"[I]f jurisdiction exists allowing the commissioner to [enter an award against the employer's estate and the fund under the facts of this case], such authority must be found in the act itself. As a result, the jurisdictional question in this appeal presents, at bottom, a matter of statutory interpretation." *Stickney* v. *Sunlight Construction, Inc.*, 248 Conn. 754, 761, 730 A.2d 630 (1999). Accordingly, our review of the board's ruling is plenary.

"In interpreting statutes, we are guided by well established tenets of statutory construction. [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . .   In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law. . . . *Conway* v. *Wilton*, 238 Conn. 653, 663–64, 680 A.2d 242 (1996). *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 444, 705 A.2d 1012 (1997)." (Internal quotation marks omitted.) *Stickney* v. *Sunlight Construction, Inc.*, supra, 248 Conn. 761–62.

"The primary statutory provision establishing the subject matter jurisdiction of the commissioner is General Statutes . . . § 31-278. [That statute] provides in relevant part that each commissioner 'shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of [the act]. . . . [Each commissioner] shall have jurisdiction of all claims and questions arising . . . under [the act] . . . .' " Id., 762. "Administrative agencies are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves. *Castro* v. *Viera*, 207 Conn. 420, 428, 541 A.2d 1216 (1988). Long ago, we said that the jurisdiction of the [workers' compensation] commissioners is confined by the [a]ct and limited by its provisions. Unless the [a]ct gives the [c]ommissioner the right to take jurisdiction over a claim, it cannot be conferred upon [the commissioner] by the parties either by agreement, waiver or conduct. . . . While it is correct that the act provides for proceedings that were designed to facilitate a speedy, efficient and inexpensive disposition of matters covered by the act . . . the charter for doing so is the act itself. The authority given by the legislature is carefully circumscribed and jurisdiction under the act is clearly defined and limited to what are clearly the legislative concerns in this remedial statute. . . . Id., 426–27. A commissioner may exercise jurisdiction to hear a claim only under the precise circumstances and in the manner particularly prescribed by the enabling legislation. . . . *Discuillo* v. *Stone & Webster*, 242 Conn. 570, 576, 698 A.2d 873 (1997); see also *Kinney* v. *State*, 213 Conn. 54, 60, 566 A.2d 670 (1989); *Gagnon* v. *United Aircraft Corp.*, 159 Conn. 302, 305, 268 A.2d 660 (1970). Because of the statutory nature of our workers' compensation system, policy determinations as to what injuries are compensable and what

jurisdictional limitations apply thereto are for the legislature, not the judiciary or the board, to make. *Discuillo* v. *Stone & Webster*, supra, 577. *Hanson* v. *Transportation General, Inc.*, 245 Conn. 613, 618, 716 A.2d 857 (1998)." (Internal quotation marks omitted.) *Stickney* v. *Sunlight Construction, Inc.*, supra, 248 Conn. 760–61.

This court previously has not considered whether a commissioner has jurisdiction to enter an award against an employer when the claim against the employer is barred for some reason unrelated to the requirements of the act. Our research has revealed the following two cases in which other state courts have considered this question: *Ortiz* v. *Workers' Compensation Appeals Board*, 4 Cal. App. 4th 392, 5 Cal. Rptr. 2d 484 (1992); and *Zak* v. *Gypsy*, 279 N.W.2d 60 (Minn. 1979).

In *Ortiz*, the California Court of Appeal considered whether an injured employee could seek benefits from California's uninsured employers fund following the uninsured employer's discharge of debts in bankruptcy. The plaintiff argued that, although, under the facts of the case, *enforcement* of an award against the employer was prohibited, *issuance* of an award against the employer for purposes of establishing the California fund's liability was not prohibited. *Ortiz* v. *Workers' Compensation Appeals Board*, supra, 4 Cal. App. 4th 398. The court recognized that bankruptcy law does not preclude a judgment against a debtor in order to establish the liability of codebtors, guarantors, or insurers. Id. The court determined, however, that the California fund's liability depended on the plaintiff's strict compliance with statutory conditions. Id. The court also determined that, because the plaintiff had failed to file a proof of claim in the bankruptcy proceeding, he had failed to make demand on the employer for payment, which was a statutory prerequisite for the California fund's liability. Id., 398–99. The court concluded that the employee was barred from obtaining an award in

a workers' compensation proceeding against either the employer or the California fund. Id., 399.

In *Zak* v. *Gypsy*, supra, 279 N.W.2d 62–63, the Supreme Court of Minnesota considered whether that state's workers' compensation division (division) had personal jurisdiction to hear a claim against an employer, payable by the state's special compensation fund, "where the no longer extant employer did not receive notice of the claim and did not participate in the proceedings . . . ." The employer, an unincorporated rock band comprised of five musicians, had disbanded before the claimant brought his claim. Id., 63–64. The division had mailed notice of the claim to the employer's last known address, but the mailings had been returned stamped " 'addressee unknown.' " Id., 64. The court concluded that the statute was intended to permit an employee to recover from the Minnesota fund for compensable injuries not compensated for by his employer, and that that purpose should not be frustrated merely because an employer ceases to exist. Id., 65. Accordingly, the court held that the division had full jurisdiction to hear the claim even though the employer was not a party to the proceeding. Id.

We recognize that the *Ortiz* and *Zak* cases are of limited guidance in this case because of differences between the statutory schemes at issue in them and our own statute. Most significantly, the statute under consideration in *Zak* does not require an award against the employer as a prerequisite to the liability of the special compensation fund. See id., 65 n.3. Nevertheless, we also recognize, as those courts did, that there are circumstances in which a determination of liability lawfully may enter against an entity against which a judgment cannot be enforced, for the limited purpose of

establishing the liability of a third party.[15] See, e.g., *Lightowler* v. *Continental Ins. Co.*, 255 Conn. 639, 769 A.2d 49 (2001) (plaintiff may maintain action against discharged bankrupt solely for purpose of obtaining judgment as necessary prerequisite to seeking recovery against insurer).

Although neither the probate statutes nor the act explicitly provides for such determinations, neither do those statutes preclude them. Cf. *In re Jet Florida Systems, Inc.*, 883 F.2d 970, 973 (11th Cir. 1989) (Bankruptcy Code does not preclude determining liability of bankrupt for purposes of establishing liability of third parties); but see *Brown* v. *Bon Dental Lab*, 6 Conn. Workers' Comp. Rev. Op. 132, 137 (1989) (holding that before order against fund may enter, there must be authority to enter award against employer). We also note that the labor commissioner, Renato E. Ricciuti, testified in support of the proposed legislation that is now codified at § 31-355 that "[n]othing is sadder than to see a badly injured worker who has legitimate compensation rights but is denied benefits because the employer failed to follow the law and obtain insurance or has become bankrupt or insolvent." Conn. Joint Standing Committee Hearings, Labor, 1959 Sess., p. 148. "It is now well settled that testimony before legislative committees may be considered in determining the particular problem or issue that the legislature sought to

---

[15] The court in *Ortiz* v. *Workers' Compensation Appeals Board*, supra, 4 Cal. App. 4th 398, cited *In re Walker*, 927 F.2d 1138 (10th Cir. 1991), and compared that case with *Armenta* v. *Edmonds*, 201 Cal. App. 3d 464, 247 Cal. Rptr. 204 (1988). In *In re Walker*, supra, 1144, the court concluded that a creditor could proceed against a discharged bankrupt for purposes of establishing entitlement to recover from a state fund established to satisfy judgments based on deceitful real estate transactions. In *Armenta* v. *Edmonds*, supra, 466, the court held that, because the plaintiff could not obtain a judgment against a discharged bankrupt, she could not seek recovery from a state fund where the statute establishing the fund required a final judgment as a prerequisite for applying to the fund.

address by the legislation. . . . This is because legislation is a purposive act . . . and, therefore, identifying the particular problem that the legislature sought to resolve helps to identify the purpose or purposes for which the legislature used the language in question." (Internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 804, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998). Ricciuti's remarks support the view that the legislature intended that the fund would be liable if an employer were bankrupt, in which case no judgment could enter against it.[16] Finally, we note that the purposes of the nonclaim statute in no way would be compromised by the entry of an award against a closed estate for the limited purpose of establishing the fund's liability.

General Statutes § 31-355 (b) provides in relevant part that "[w]hen an award of compensation has been made under the provisions of this chapter against an *employer who fails or is unable* to pay medical and surgical aid or hospital and nursing service required under this chapter or any type of compensation for disability, or both, whether for total or partial disability of a permanent or temporary nature, death benefit, funeral expense, or any adjustment in compensation required by this chapter, and whose insurer fails or is unable to pay the compensation, such compensation shall be paid from the Second Injury Fund. . . ." (Emphasis added.) We previously have held that the act "is a remedial statute that should be construed generously to accomplish its purpose." *Driscoll* v. *General Nutrition Corp.*, supra, 252 Conn. 220. The clear purpose of § 31-355 is

---

[16] We note that the board twice has declined to rule on whether an employer's discharge in bankruptcy renders a commissioner's award against the employer a legal nullity, thus barring an order to the fund to pay pursuant to § 31-355. See *Anderson* v. *Colt Mfg. Co.*, 14 Conn. Workers' Comp. Rev. Op. 240, 244 (1995); *Walton* v. *Hector Trucking*, 13 Conn. Workers' Comp. Rev. Op. 239, 241 (1995).

to provide compensation for an injured employee when the employer fails to pay. The statute does not make any distinctions concerning the reasons for the employer's failure to pay. We will not assume that the legislature intended to exclude from the scope of the statute claims where the reason for the failure to pay is that the claim is barred by the nonclaim statute.

An award against an employer and the employer's failure to pay are prerequisites to the fund's liability to pay an award. We conclude, therefore, that the commissioner's ability to enter an award against an employer's estate for the purpose of establishing the fund's liability when a claim against the estate is barred by the nonclaim statute is necessary for the operation of § 31-355. Accordingly, the commissioner has jurisdiction to enter an award against an employer's estate for purposes of establishing the fund's liability when the claim is barred by the nonclaim statute, provided that the commissioner determines that the claim otherwise meets the substantive and procedural requirements of the act, i.e., that the claimant was an employee of the alleged employer, that the claimant's injury arose in the course of his employment, and that the claimant complied with the notice requirements of the act.[17]

C

Having concluded that the commissioner has jurisdiction to enter an award against the employer's estate when the claimant has established that the requirements of the act are met, we now address the plaintiff's claim that the commissioner has no jurisdiction to construe the probate statutes in order to determine whether

---

[17] We note, as we noted in *Lightowler* v. *Continental Ins. Co.*, supra, 255 Conn. 651 n.19, that representatives of the employer's estate may be required to participate in the proceedings before the commissioner to the extent required to establish that the claim met the requirements of the act. This fact would not interfere with the policies underlying the nonclaim statute.

a claim is, in fact, barred. The fund claims, to the contrary, that the commissioner is required to make such a determination. We conclude that the commissioner simply has no need to make such a determination.

As we previously have noted, the relevant statutory language provides that the fund shall pay compensation "[w]hen an award of compensation has been made under the provisions of this chapter against an employer who fails or is unable to pay . . . ." General Statutes § 31-355 (b). The statute imposes no duty on the commissioner to determine the reasons for the employer's failure to pay before imposing liability on the fund. We further note that § 31-355 (c) provides that an employer and its insurer are liable to reimburse the fund for any payments made to an employee.[18] This indicates that an award may be entered against the fund when an employer is solvent which, in turn, indicates that the commissioner has no duty to determine whether the employer is unable to pay the award before imposing liability on the fund. Thus, the only prerequisites to an order to the fund to make payment are that: (1) the substantive and procedural requirements of the act have been met; (2) an award against the employer has been entered; and (3) the employer and its insurer have failed

---

[18] In this regard, we note that General Statutes § 31-355a (a) provides in relevant part that the amounts due the fund under § 31-355 "shall be collectible by any means provided by law for the collection of any tax due the state of Connecticut or any subdivision thereof . . . ." Section 31-355a (b) provides in relevant part that "[a]ny such amount due shall be a lien from the due date until discharged by payment against all the property of the employer or insurer within the state . . . . Any action for the foreclosure of such lien shall be brought by the Attorney General in the name of the state in the superior court for the judicial district in which the property subject to such lien is situated . . . ." Thus, the fund may obtain in Superior Court a determination of whether the claim against the estate is barred by the nonclaim statute, and its claim for reimbursement is not interfered with if the commissioner does not make that determination.

to pay.[19] We conclude, therefore, that the commissioner need not determine whether a claim against an employer's estate is barred by the nonclaim statute before entering an award against the estate or ordering the fund to make payments. We therefore affirm the board's ruling that it had jurisdiction to enter an award against the employer's estate as a prerequisite to ordering the fund to make payments.

### III

We now address the fund's contention that the board improperly affirmed the commissioner's ruling denying the fund's claim that pursuant to § 31-293; see footnote 5 of this opinion; the award must be reduced by the amount recovered by the plaintiff in the settlement of her action against the city of Waterbury.

In *McQuade* v. *Ashford*, 130 Conn. 478, 482–83, 35 A.2d 842 (1944), this court held that "[t]he finding in a compensation case should contain all the subordinate facts which are pertinent to the inquiry, and the conclusions of the commissioner therefrom. . . . If a finding does not conform to these requirements . . . neither the [board] nor this court is in a position to decide whether the award was correct and just or not. *Rossi* v. *Jackson Co.*, 117 Conn. 603, 605, 169 Atl. 617 [1933]. To refuse to find the facts which a party seeks to have stated because the commissioner deems them unnecessary or immaterial is not ordinarily fair to the parties, the court or the State and its officers. It is not fair to the parties because they are entitled to have found such proven facts as they deem it necessary to present to

---

[19] Because we conclude that the only prerequisites to the entering of an award against the fund are that the claim meet the requirements of the act and that the employer fail to pay the award, we do not address the fund's claim that the commissioner's finding and award improperly was directed at Dember's estate, rather than the executors of her estate. That technicality pertains only to the enforceability of the award against the estate, not the award against the fund.

the court upon the appeal. *Senzamici* v. *Waterbury Castings Co.*, 115 Conn. 446, 450, 161 Atl. 860 [1932]. See also *Kenyon* v. *Swift Service Corporation*, 121 Conn. 274, 279, 184 Atl. 643 [1936]. Cases under the [act] are upon a different basis from actions between ordinary litigants. No case under this [a]ct should be finally determined when the trial court, or this court, is of the opinion that, through inadvertence, or otherwise, the facts have not been sufficiently found to render a just judgment. When this appears, the case must be returned to the commissioner for a finding in accordance with the suggestions made by the [board] or this court, and for an award to be made upon the corrected finding. *Cormican* v. *McMahon*, 102 Conn. 234, 238, 128 Atl. 709 [1925]." (Internal quotation marks omitted.)

In *Tsoukalas* v. *Bolton Mfg. Co.*, 130 Conn. 658, 663–64, 37 A.2d 357 (1944), this court held that "[t]he discretion [to remand the case] is a legal discretion vested in the [board]. This court, being a tribunal of appellate jurisdiction only, has no such discretion. In so far as a contrary suggestion is expressed by the words 'or this court' used in the passage quoted from *Cormican* v. *McMahon*, supra, [102 Conn. 238] it is incorrect and is hereby overruled. The question remains whether the [board's] failure to remand the case to the commissioner constituted an abuse of its discretion, or, to put it more concretely, was the [board] warranted in concluding that the facts had been sufficiently found to render a just judgment?"

Neither the commissioner nor the board, in any of the various rulings issued by them during the course of this case, has addressed in any substantive way the fund's claim that the plaintiff's recovery of $386,791.78 in the settlement of her action against the city of Waterbury should be credited toward any award against the fund, nor have they explained why such credit should not be given. In the complete absence of any record

showing that this claim has ever been addressed on its merits, we cannot conclude that the board was "warranted in concluding that the facts had been sufficiently found [for the commissioner] to render a just judgment"; *Tsoukalas* v. *Bolton Mfg. Co.*, supra, 130 Conn. 664; that the fund was not entitled to a credit for the plaintiff's third party recovery. To the extent that the board's ruling that the commissioner need not consider the claim was based on its conclusion that the claim was not timely or properly preserved, we already have concluded in this opinion that the claim was preserved. See part I of this opinion. We therefore conclude that the board's denial of the fund's request for a remand to the commissioner for consideration of this issue was an abuse of discretion. Accordingly, we reverse the board's decision affirming the commissioner's denial of the fund's request to open the claim to consider the fund's claim for a credit for the plaintiff's third party recovery from the city of Waterbury.

IV

Lastly, we address the fund's claim that the commissioner improperly denied the fund's right to contest its liability after the award was entered pursuant to § 31-355 (b). The relevant language of the statute provides that, if the fund gives notice of its intent to contest the claimant's right to compensation on or before the twenty-eighth day after receipt of an order of payment, "[t]he commissioner shall hold a hearing on such contested liability at the request of the Treasurer or the employee in accordance with the provisions of [the act]. . . ." General Statutes § 31-355 (b). The fund argues that this provision is mandatory, and, regardless of whether it has participated in the prior litigation of the claim, the commissioner is required to hold a hearing upon notice of the fund's intent to contest liability and a request for a hearing. The plaintiff argues that the statute is intended to provide the fund with an opportu-

nity to contest liability for a claim when it has not had a prior opportunity to do so. We agree with the plaintiff.

The principles governing our interpretation of statutes are set forth in part II B of this opinion. We find the legislative history of House Bill No. 6869, the bill ultimately enacted as Public Acts 1991, No. 91-207, and codified at § 31-355 (b), to be particularly instructive. During debate on the bill on the Senate floor, the following colloquy took place between Senator Thomas F. Upson and Senator James H. Maloney: "Senator Upson: . . . My next problem or question would be does this [bill] mean that the claimant who has initially be[en] challenged by an insurance company, whether or not the accident was work related, could that be challenged again once the determination has been made that this is Second Injury? That is challenged again by the Second Injury Fund? . . .

"Senator Maloney: The answer to the question is no. The bill comes into play when the Commissioner orders the payment of benefits from the fund because an employer or insurer failed or was unable to do so, it allows the Treasurer to contest the eligibility regardless of whether the employer has already done so. So it has to do with the issue of contesting eligibility and the intention is if the eligibility has already been contested below, I don't see . . . it is not the intention of the bill to allow it to be relitigated in effect. It is where it has not been contested, the Treasurer, under this legislation, would have the right to then make that contest. . . .

"Senator Upson: . . . [S]o let's say that the claimant files a piece of paper saying I was hurt on the job, files that with the employer. The employer does nothing to respond to this within the Workers' Compensation system and then a motion to preclude is filed by the attorney for the claimant . . . . And then later on this is given to the Second Injury Fund or the Second Injury

Fund takes over, does this mean that the Second Injury Fund, through I imagine . . . the Attorney General's office, does this mean then that since a motion to preclude has been filed that this cannot be, so to speak, reclaimed or brought up again? . . .

"Senator Maloney: The purpose of the bill is to allow precisely that. It is to allow the Treasurer to argue that the claimant is not eligible, notwithstanding the fact that the employer on the initial claim did in fact fail to make that claim. It gives the Treasurer as the guardian of the Second Injury Fund the right to litigate that issue." 34 S. Proc., Pt. 6, 1991 Sess., pp. 2003–2005.

Still later during the debate on the bill, Senator Maloney stated that "we are asking the Treasurer to say, well, I am not going to be bound by the failure of the employer to contest initial eligibility in Second Injury Fund cases where the Treasurer had no knowledge at the beginning that he was necessarily going to be a party to the ultimate payment." Id., p. 2007.

The testimony before the joint standing committee on appropriations concerning the bill is also instructive. Paul Vitarelli, a special investigator for the fund, testifying on its behalf in support of the proposed legislation, stated that "when the issue of compensability is not clear cut and must be decided as the statute is now written, the fund is precluded from any defense in these cases, resulting in the fund being ordered to pay claims without having the opportunity to defend the claim." Conn. Joint Standing Committee Hearings, Appropriations, Pt. 1, 1991 Sess., p. 66. Testimony before legislative committees may be considered in construing legislative intent. See *Dowling* v. *Slotnik*, supra, 244 Conn. 804.

Vitarelli also submitted documentation to the committee, including a memorandum to him from James Tyler, the assistant treasurer of the fund, and Cyrus

Gaeta, the fund's supervisor of investigations, in which they suggested changes to the notice provisions of the statute. The memorandum provided that "in cases where the employer fails to carry Workers' Compensation Insurance, there are many cases in which the liability is eventually forced upon the Second Injury Fund. The Attorney General's office is not notified until the time limitation has already expired. In those cases the Second Injury Fund is precluded from any defense in the same manner as the employer even though the Fund is not required to be made aware of the impending conclusion." Conn. Joint Standing Committee Hearings, supra, p. 159. The memorandum went on to describe a recent claim where compensability was questionable and the employer had failed to defend. It noted that "[e]ven though the Fund vigorously defended the case, the evidence was not considered in determining the Finding and Award. The motion to preclude was brought by the Claimant, was approved and the Fund was also precluded from any defense. This loophole in the law allows for the possibility of fraud and or collusion with no remedy." Id.

With this legislative history in mind, we cannot conclude that § 31-355 (b) was intended to require the commissioner to provide the fund with an opportunity to contest liability in every case where an order to make payment is entered against the fund, regardless of whether the fund participated in prior proceedings. We recognize that the legislative history is ambiguous as to whether the statute was intended to give the fund an opportunity to contest liability only when compensability had not previously been litigated, or also when it had been litigated, but the fund had not had a meaningful opportunity to participate in the proceedings. We conclude, however, that, under either reading, the fund was not entitled to an opportunity to contest liability after the entry of the award in this case. The fund fully

participated in the proceedings before the commissioner and the board for more than fourteen years. The fund was permitted to present evidence and arguments to both the commissioner and the board on all of its claims. We cannot conclude that, under these circumstances, § 31-355 (b) was intended to give the fund yet another opportunity to relitigate its claims after entry of the order to make payments. Accordingly, we reject the fund's claim that the commissioner improperly denied it an opportunity to contest liability.

The decision of the board is affirmed in part and reversed in part, and the case is remanded to the board with direction to remand the case to the commissioner for a hearing limited to the issue of whether the fund is entitled to a credit for the plaintiff's third party recovery from the settlement of her action against the city of Waterbury.

In this opinion the other justices concurred.