BRIAN STICKNEY *v.* SUNLIGHT
CONSTRUCTION, INC., ET AL.
(SC 15968)

Borden, Berdon, Norcott, Katz and McDonald, Js.

Argued January 21—officially released May 25, 1999

*Jason M. Dodge,* for the appellant (defendant Aetna Casualty and Surety Company).

*John T. Scully*, for the appellee (defendant Commercial Union Insurance Companies).

*Opinion*

NORCOTT, J. The sole issue in this certified appeal is whether the Appellate Court properly concluded that the workers' compensation commissioner lacked subject matter jurisdiction to open and modify a voluntary agreement filed by the defendant compensation insurance provider.[1] Because we conclude that the commissioner did not have jurisdiction to open and modify the voluntary agreement, we affirm the judgment of the Appellate Court.

The defendant Aetna Casualty and Surety Company (Aetna), filed a motion with the workers' compensation commission (commission) to open and modify a voluntary agreement in order to have itself replaced by the defendant Commercial Union Insurance Companies (Commercial Union), as the insurer responsible for payment of workers' compensation benefits under the voluntary agreement. The workers' compensation commissioner (commissioner) denied the motion, and Aetna appealed the decision to the workers' compensation review board (board), which reversed the commissioner's decision. On remand, the commissioner granted Aetna's motion to open the voluntary agreement. The board affirmed the decision, and Commercial Union appealed to the Appellate Court. The Appellate Court concluded that the commissioner had lacked subject matter jurisdiction to open and modify the voluntary agreement and reversed the decision of the board. *Stickney* v. *Sunlight Construction, Inc.*, 48

---

[1] The specific question certified in this appeal is: "Did the Appellate Court properly conclude that the workers' compensation commissioner had no jurisdiction to consider the motion to open a voluntary agreement filed by Aetna Casualty and Surety Company?" *Stickney* v. *Sunlight Construction, Inc.*, 245 Conn. 919, 717 A.2d 236 (1998).

Conn. App. 609, 618, 711 A.2d 1193 (1998). We granted Aetna's petition for certification on this issue. *Stickney* v. *Sunlight Construction, Inc.*, 245 Conn. 919, 717 A.2d 236 (1998).

The Appellate Court opinion sets forth the following facts and procedural history relevant to this appeal. "On February 7, 1985, [the plaintiff, Brian Stickney] was injured during the course of his employment when he slipped and fell on a patch of ice. Thereafter, [his employer, the defendant Sunlight Construction, Inc. (Sunlight)] filed through its insurance agent an injury report with Aetna. Aetna had issued a workers' compensation insurance policy to Sunlight for the period of April 11, 1984, through April 11, 1985, but canceled the policy for nonpayment of premium in December, 1984, prior to the date of Stickney's injury. Aetna failed to verify its coverage for this claim, however, and issued a voluntary agreement for payment of benefits to Stickney, which agreement was approved by the commission on June 2, 1986. It is undisputed that Aetna did not notify the board of commissioners of its cancellation of Sunlight's policy as required by General Statutes (Rev. to 1985) § 31-348.

"Subsequent to Aetna's cancellation, Sunlight procured workers' compensation insurance from Commercial Union. The Commercial Union policy covered the period from January 17, 1985 through January 17, 1986, and, therefore, was effective at the time of Stickney's injury. It is undisputed, however, that Commercial Union never filed proof of coverage with the board of commissioners as required by [General Statutes (Rev. to 1985)] § 31-348.

"In 1991, when Stickney's claim was reactivated because of recurring symptoms, Aetna discovered that its policy with Sunlight had been canceled prior to the date of Stickney's injury. Consequently, Aetna filed with

the commission a motion to open and modify the voluntary agreement on the ground that Aetna was not Sunlight's insurer at the time of Stickney's injury, and to substitute Commercial Union for Aetna in the voluntary agreement. In that motion, Aetna sought a determination of which insurer was responsible for Stickney's workers' compensation benefits and, if Commercial Union was adjudged responsible, Aetna sought reimbursement from Commercial Union of the benefits Aetna paid to Stickney.

"A formal hearing was held on December 15, 1992. On May 13, 1993, the commissioner denied Aetna's motion on the ground that the commission did not have subject matter jurisdiction to decide which insurer was liable to pay the claim because that issue involved a determination of rights under contract law. Aetna appealed the commissioner's decision to the board and, on August 2, 1994, the board reversed the commissioner's decision and remanded the case for further proceedings on the merits of the remaining issues. On remand, the commissioner granted Aetna's motion to open the voluntary agreement and substituted Commercial Union in lieu of Aetna as the insurer of Stickney's claim. The board affirmed the commissioner's decision on April 25, 1997, and this appeal followed." *Stickney* v. *Sunlight Construction, Inc.*, supra, 48 Conn. App. 612–13.

The Appellate Court rejected Aetna's argument in defense of the commissioner's decision, that "the commissioner had jurisdiction to consider Aetna's motion to open under the broad equitable powers provided to the commissioner in [General Statutes (Rev. to 1985)] §§ 31-315 and 31-278." *Stickney* v. *Sunlight Construction, Inc.*, supra, 48 Conn. App. 614. In its opinion, the Appellate Court began by recognizing that the commission's subject matter jurisdiction is limited to that which is expressly granted by statute, and that the Workers'

Compensation Act (act) "involves the legal relationship between employers and employees." Id., 616. In contrast, the issue to be decided were the commissioner to open the voluntary agreement, is one of contract law. As such, that issue was "independent of the rights of the injured employee and his employer," and, accordingly, beyond the jurisdiction of the commissioner. Id., 617. As support for this conclusion, the Appellate Court relied on our early case of *Witchekowski* v. *Falls Co.*, 105 Conn. 737, 740, 136 A. 565 (1927), for the proposition that the commissioner lacked subject matter jurisdiction to determine which of two insurers was liable for payments already made by the employer, where the question of "[w]hich of the two insurers would be obligated to make the payments consequent upon an injury would have to be determined by the provisions of the policies." Accordingly, the Appellate Court concluded that the commissioner lacked jurisdiction to open and modify the voluntary agreement in the present case. *Stickney* v. *Sunlight Construction, Inc.*, supra, 618.

Before this court, Aetna repeats its equitable powers claim, citing General Statutes (Rev. to 1985) §§ 31-278, 31-298 and 31-315 for support. Aetna also argues that the commissioner has specific statutory authority to open the voluntary agreement pursuant to General Statutes § 31-342 and General Statutes (Rev. to 1985) § 31-275 (5) (C) and (E). Because we conclude that the commissioner did not have jurisdiction to determine the legal questions central to the motion to open, we affirm the judgment of the Appellate Court.[2]

---

[2] Commercial Union also raises three alternate grounds for affirmance, which we need not reach, and therefore decline to address. These three grounds are: (1) Aetna is estopped from denying coverage because it failed to notify the commission of the cancellation of Sunlight's policy as required under General Statutes (Rev. to 1985) § 31-348 and, therefore, Aetna's policy is still in effect; (2) the motion to open and modify the voluntary agreement did not satisfy the requirements of General Statutes (Rev. to 1985) § 31-315 because Aetna was negligent in failing to verify whether Sunlight's policy was still in effect, and because the actual status of Sunlight's policy was

We begin by setting forth the standard of review applicable to workers' compensation appeals. " 'It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny.' . . . *Duni* v. *United Technologies Corp./Pratt & Whitney Aircraft Division*, 239 Conn. 19, 24–25, 682 A.2d 99 (1996); *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). 'Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision.' *Doe* v. *Stamford*, [241 Conn. 692, 697, 699 A.2d 52 (1997)] . . . ." (Citation omitted.) *Dowling* v. *Slotnick*, 244 Conn. 781, 798, 712 A.2d 396, cert. denied, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998). Accordingly, our review in this appeal is de novo.

In addressing Aetna's claim, we are mindful of the jurisdictional limitations placed on administrative agencies such as the commission. "Administrative agencies are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves." *Castro* v. *Viera*, 207 Conn. 420, 428, 541 A.2d 1216 (1988). "Long ago, we said that the jurisdiction of the [workers' compensation] commissioners is confined by the [a]ct and limited by its provisions. Unless the [a]ct gives the [c]ommissioner the right to take jurisdiction over a claim, it cannot be

discoverable with due diligence when the voluntary agreement was issued; and (3) Aetna's motion to open and modify the voluntary agreement was not filed until nearly eight years after the date of the injury, and Commercial Union has been prejudiced by the delay.

conferred upon [the commissioner] by the parties either by agreement, waiver or conduct. . . . While it is correct that the act provides for proceedings that were designed to facilitate a speedy, efficient and inexpensive disposition of matters covered by the act . . . the charter for doing so is the act itself. The authority given by the legislature is carefully circumscribed and jurisdiction under the act is clearly defined and limited to what are clearly the legislative concerns in this remedial statute." (Citations omitted; internal quotation marks omitted.) Id., 426–27. " 'A commissioner may exercise jurisdiction to hear a claim only under the precise circumstances and in the manner particularly prescribed by the enabling legislation.' . . . *Discuillo* v. *Stone & Webster*, 242 Conn. 570, 576, 698 A.2d 873 (1997); see also *Kinney* v. *State*, 213 Conn. 54, 60, 566 A.2d 670 (1989); *Gagnon* v. *United Aircraft Corp.*, 159 Conn. 302, 305, 268 A.2d 660 (1970). 'Because of the statutory nature of our workers' compensation system, policy determinations as to what injuries are compensable and what jurisdictional limitations apply thereto are for the legislature, not the judiciary or the board, to make.' *Discuillo* v. *Stone & Webster*, supra, 577." *Hanson* v. *Transportation General, Inc.*, 245 Conn. 613, 618, 716 A.2d 857 (1998).

In accordance with these limiting principles, if jurisdiction exists allowing the commissioner to open the voluntary agreement, such authority must be found in the act itself. As a result, the jurisdictional question in this appeal presents, at bottom, a matter of statutory interpretation. "In interpreting statutes, we are guided by 'well established tenets of statutory construction. [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative

policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law.' . . . *Conway* v. *Wilton*, 238 Conn. 653, 663–64, 680 A.2d 242 (1996)." *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 444, 705 A.2d 1012 (1997).

The primary statutory provision establishing the subject matter jurisdiction of the commission is General Statutes (Rev. to 1985) § 31-278. General Statutes (Rev. to 1985) § 31-278 provides in relevant part that each commissioner "shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of [the act]. . . . [Each commissioner] shall have jurisdiction of all claims and questions arising . . . under [the act] . . . ." A plain reading of this language suggests that the commissioner's subject matter jurisdiction is limited to adjudicating claims arising under the act, that is, claims by an injured employee seeking compensation from his employer for injuries arising out of and in the course of employment.

Aetna's motion to open the voluntary agreement differs from the traditional claim to be adjudicated under the act, however, because the issue underlying Aetna's motion is an insurance coverage issue, requiring the evaluation of insurance policies and the application of contract law. Put more generally, resolving the central issue in the motion requires application of laws other than the provisions of the act. Thus, although the injured employee's original claim "arose under the act," the question we must address in this appeal is whether the motion to open, itself, is beyond the jurisdictional

bounds circumscribed by the explicit enabling legislation of the act.

Our recent case of *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 438, is instructive in resolving this question.[3] In *Hunnihan*, we concluded that the commissioner had subject matter jurisdiction to order reimbursement by the Connecticut Insurance Guaranty Association (association), although that would require a determination by the commissioner that the claim to be reimbursed was a covered claim within the meaning of General Statutes § 38a-838 (6)[4] of the Connecticut Insurance Guaranty Association Act (guaranty act), and therefore, required the commissioner to interpret statutory provisions outside of the act. *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 447. We derived this conclusion by looking to the text of the act itself. "General Statutes § 31-355 (e) of the [act] directly refers to the association, providing that 'whenever the employer's insurer has been determined to be insolvent . . . payments required under [this section] shall be the obligation of the [association] pursuant to the provisions of sections 38a-836 to 38a-853, inclusive.' " Id., 445. As a result, "[t]he insertion in § 31-355 (e) delineating the association's obligations under the [act] reflects the legislature's intent for the commission[er] to have jurisdiction

---

[3] We note that the Appellate Court resolved this question primarily based upon *Witchekowski* v. *Falls Co.*, supra, 105 Conn. 737, and did not apply *Hunnihan*, although that decision was published approximately four months prior to the Appellate Court's decision. While the reasoning of *Witchekowski* remains sound, our conclusion in *Hunnihan* is more directly relevant to the present issue. As a result, in affirming the judgment of the Appellate Court, we necessarily reach our conclusion by a slightly different path because we do address *Hunnihan* in our analysis.

Further, we disagree with the Appellate Court's conclusion that Aetna has no standing to raise coverage claims in a motion for modification because it is not a signatory to the voluntary agreement. See *Stickney* v. *Sunlight Construction, Inc.*, supra, 48 Conn. App. 616. Because we conclude, however, that the commissioner has no jurisdiction over the motion to open, we do not rest our analysis on this issue.

[4] General Statutes § 38a-838 (6) defines "covered claim" under the Connecticut Insurance Guaranty Association Act.

to adjudicate claims against the association originating under that act. Otherwise, it would not have included instructions regarding the association's responsibilities under the [act] at all." Id. Jurisdiction existed in *Hunnihan* because, although the central question in that case required interpretation of provisions outside the act, the provision to be interpreted, § 38a-836, explicitly was referenced and thereby incorporated into the commissioner's jurisdiction under the act.[5]

Consistent with our conclusion in *Hunnihan*, in order for jurisdiction to be established in the present case, the act explicitly must provide authority by which the coverage issue central to this appeal may be determined. Because none of the provisions upon which Aetna relies provide such authority, we conclude that the act does not establish subject matter jurisdiction in the commissioner over the motion to open.

We next examine the language of the act. Aetna contends that the act establishes the commissioner's subject matter jurisdiction over the motion to open pursuant to equitable powers provided in General Statutes (Rev. to 1985) §§ 31-278, 31-298 and 31-315. First, General Statutes (Rev. to 1985) § 31-278 provides in relevant part that each commissioner "shall have all

---

[5] Although not at issue in the present case where the coverage question is central, we note for clarification that "[t]he subject matter jurisdiction of the commission in previous cases has encompassed the interpretation of statutory provisions codified outside the [act] when such interpretations have been *incidentally* necessary to the resolution of a case arising under that act. See *Wonacott* v. *Bartlett Nuclear, Inc.*, 15 Conn. Workers' Comp. Rev. Op. 334 (1996) (board interpreted Internal Revenue Code in determining wages under General Statutes § 31-310); *Pascarelli* v. *Moliterno Stone Sales*, 14 Conn. Workers' Comp. Rev. Op. 328 (1995) (board interpreted Bankruptcy Code in determining whether relief from stay required to allow proceedings against insurer); *Versage* v. *Kurt Volk, Inc.*, 11 Conn. Workers' Comp. Rev. Op. 253 (1993) (board interpreted provision of guaranty act in reviewing award of interest on disability payments pursuant to General Statutes § 31-300)." (Emphasis added.) *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 443 n.5.

powers necessary to enable him to perform the duties imposed upon him by the provisions of [the act]. . . . [Each commissioner] shall have jurisdiction of all claims and questions arising . . . under [the act] . . . ." On its face, General Statutes (Rev. to 1985) § 31-278 makes no reference to adjudication of the coverage issues in this case.

Second, General Statutes (Rev. to 1985) § 31-298, which addresses the conduct of hearings, provides in relevant part that "the commissioner shall proceed, so far as possible, *in accordance with the rules of equity. He shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but shall make inquiry . . . through oral testimony or written and printed records, as is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit of this chapter. . . .*" (Emphasis added.) This provision deals with the manner in which testimony is obtained and hearings are conducted. It does not provide the commissioner with any specific jurisdiction over particular types of claims or questions. Here, as well, there is no reference to the pertinent coverage issues, and thus no incorporation of them, as *Hunnihan* would require.

Third, General Statutes (Rev. to 1985) § 31-315, which addresses the modification of awards and voluntary agreements, provides in relevant part that a voluntary agreement concerning compensation under the act "shall be subject to modification . . . in accordance with the procedure for original determinations, whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement or award *in order*

*properly to carry out the spirit of this chapter. . . ."*
(Emphasis added.) Again, this provision lacks any reference to the coverage issues that are central to the motion to open.

Thus, standing alone, none of these provisions provides the commissioner with jurisdiction to resolve the coverage question. Nevertheless, Aetna contends that to conclude that the commissioner lacks jurisdiction in this case would be inconsistent with the "broad equitable powers" of these three provisions. If no provision confers jurisdiction on its own, however, we disagree with Aetna's contention that taken together, the provisions somehow create jurisdiction over coverage issues under the principle of equity. If Aetna's argument were to be accepted, there would be no legal question that the commissioner, who has limited jurisdiction, could not reach under the guise of equity. Such a broad construction of subject matter jurisdiction under the act is simply untenable.

As a second argument, Aetna contends that the commissioner's jurisdiction to open the voluntary agreement is also established by § 31-342 and General Statutes (Rev. to 1985) § 31-275 (5) (C) and (E). We find this argument unconvincing as well.

Aetna begins by citing § 31-342, which provides in relevant part that "the commissioner having jurisdiction may make his award directly against such employer, insurer or both, except that, when there is doubt as to the respective liability of two or more insurers, he shall make his award directly against such insurers . . . ." Consistent with the remedial purposes and policies underlying the act, this section ensures that the injured employee will receive prompt payment of the compensation to which he is entitled. It authorizes the commis-

sioner to do no more, however, than to make the compensation award directly against *the insurers* if there is doubt as to liability. Section 31-342 makes no reference to, and therefore does not authorize, the commissioner to determine the central question at issue here, that is, which insurer is properly on the risk.[6]

[6] At oral argument before this court, the question was raised as to whether the commissioner would have had jurisdiction under § 31-342 to decide which insurer was properly on the risk if the issue arose at the time of the original adjudication of the plaintiff's benefits. The question of timing was triggered in part by our determination in *Hunnihan*, in which we concluded that the finding of jurisdiction in that instance was consistent with the remedial purpose of the act, in spite of the fact that the plaintiff already had received benefits at the time the guaranty act issue arose. *Hunnihan* v. *Mattatuck Mfg. Co.*, supra, 243 Conn. 447. We noted that "[i]t may not always be the case, however, that whenever the commission is called upon to interpret a provision of another act, the employee claimant will have already received compensation. If the commission is to function effectively in the manner contemplated by the legislature, it must be able to interpret other acts when necessary in order to resolve cases originating under the [act]. Any other result would be inconsistent with the remedial public policy underlying the [act]." Id.

The underlying purpose of the act is well established. "Connecticut first adopted a statutory scheme of workers' compensation in 1913. The purpose of the [act] . . . is to provide compensation for injuries arising out of and in the course of employment, regardless of fault. . . . Under the statute, the employee surrenders his right to bring a common law action against the employer, thereby limiting the employer's liability to the statutory amount. . . . In return, the employee is compensated for his or her losses, without having to prove liability. . . . In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." (Citations omitted; internal quotation marks omitted.) *Dodd* v. *Middlesex Mutual Assurance Co.*, 242 Conn. 375, 381, 698 A.2d 859 (1997).

These policy concerns would not be triggered by the circumstances of the present case. Because § 31-342 provides for prompt payment to the eligible claimant when doubt arises as to the proper insurer, application of § 31-342 ensures that payment to the claimant should not be delayed by the secondary determination of which carrier is properly on the risk. As a result, the stage at which this coverage issue arises does not affect our analysis here. For the same reason, the coverage issue also would not be incidentally necessary to the resolution of a claim arising under the act. Therefore, while we previously have stated that the commission's interpretation of a statutory provision outside of the act is permissible when incidentally necessary; see footnote 5 of this opinion; we leave for another day the question of whether

Aetna also relies upon General Statutes (Rev. to 1985) § 31-275 (5) (C) and (E)[7] in support of its position. These subdivisions of § 31-275 (5) indicate at most that, in determining whether a claimant is an employee under the act, the commissioner, first, may investigate into the payroll upon which the insurance premium is based, and second, may determine whether a corporate officer properly has elected to be excluded from coverage. Aetna contends that permitting the commissioner to "become involved in coverage issues and make decisions concerning the policy in place and the scope of that coverage" somehow suggests the conclusion that the commissioner also is granted jurisdiction to determine the coverage question at issue in the present case. As a plain reading of the statute reflects, however, these provisions provide no support for such a conclusion.

In contrast to the circumstances of *Hunnihan*, in the present case, none of the statutory provisions raised by Aetna provides the commissioner with jurisdiction to determine this coverage question. Such a question sounds in contract law, and requires examination of applicable policies in order to adjudicate the claim. Lacking the requisite specific grant of authority under the provisions of the act, the commissioner has no jurisdiction to open the voluntary agreement in this case. The question of whether Commercial Union or Aetna

a common-law issue properly could be determined by the commission when incidentally necessary to the resolution of a claim arising under the act.

[7] General Statutes (Rev. to 1985) § 31-275 (5) provides in relevant part: " 'Employee' means any person who has entered into or works under any contract of service or apprenticeship with an employer . . . but said term shall not be construed to include . . . (C) a member of the employer's family dwelling in his house; but, if in any contract of insurance the wages or salary of a member of the employer's family dwelling in his house is included in the payroll on which the premium is based, then such person shall . . . be deemed an employee and compensated accordingly . . . (E) an employee of a corporation who is a corporate officer and who elects to be excluded from coverage under this chapter . . . ."

should properly be on the risk is a question appropriate for another forum.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.