PRISCILLA BUGRYN ET AL. *v.* STATE OF
CONNECTICUT
(AC 27095)

DiPentima, Gruendel and Berdon, Js.

Argued May 23—officially released September 5, 2006

*Ross T. Lessack,* for the appellants (plaintiffs).

*J. Sarah Posner,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (state).

*Opinion*

DiPENTIMA, J. The plaintiffs, Priscilla Bugryn and Serena Bugryn, spouse and daughter, respectively, of the decedent, Dennis Bugryn, appeal from the decision of the workers' compensation review board (board) affirming the finding and dismissal of their claim by the workers' compensation commissioner (commissioner). The plaintiffs' sole claim is that the board improperly affirmed the commissioner's determination that the decedent was not an employee pursuant to General Statutes § 31-275 et seq., the Workers' Compensation Act (act). We affirm the decision of the board.

The parties stipulated to the following facts, of which the commissioner took administrative notice. On March 4, 1996, the decedent began the application process for the position of correction officer with the state of Connecticut. In order to be eligible for the position, job applicants were required to complete a six step application process. Applicants who successfully completed all six steps then trained for the correction officer position. The decedent received a letter dated August 25, 1997, from the department of administrative services, notifying him that he was scheduled to take a

physical fitness test on October 1, 1997. The letter also provided that the date of this physical fitness test could not be changed under any circumstances, and it gave a detailed description of each component of the test: sit and reach test, sit up test, push up test, and finally, a 1.5 mile run. This physical fitness test was the third step of the six step application process.

On the day of the test, the decedent signed a hold harmless agreement stating that he would not hold the state or any of its employees liable for any injury or damage he may incur as a result of taking the test. Shortly after completing the last component of the physical fitness test,[1] the 1.5 mile run, he died of a heart attack. At the time he took the test, he was not being paid by the state and had not received an appointment for an employment position.

The plaintiffs filed a claim for dependency benefits on October 1, 1999, which was considered at a formal hearing before the commissioner on June 8, 2004. In his November 4, 2004 finding and dismissal, the commissioner dismissed the plaintiffs' claim because of a lack of subject matter jurisdiction, finding that the plaintiffs had not satisfied their burden of proof that the decedent was an employee under § 31-275 (9) (A) (i).[2] The plaintiffs appealed from the commissioner's decision to the board. After reviewing the merits of the plaintiffs' appeal, the board affirmed the commissioner's finding and dismissal on October 24, 2005. This appeal followed.

---

[1] According to the correction officer physical assessment score sheet, the decedent did not complete the 1.5 mile run *successfully*. Although he finished the run, he failed to do it in the time allowed. As a result, he was ineligible for employment because he was required to pass all four components of the test before he could move on to the next step in the application process.

[2] General Statutes § 31-275 (9) (A) provides in relevant part: " 'Employee' means any person who . . . (i) [h]as entered into or works under any contract of service or apprenticeship with an employer, whether the contract contemplated the performance of duties within or without the state . . . ."

The plaintiffs claim that they are entitled to benefits under the act as the decedent's dependents. Specifically, they claim that the commissioner should have found that the decedent was an employee of the state at the time he performed the physical fitness test. We disagree.

We begin by setting forth the applicable standard of review. "When the decision of a commissioner is appealed to the board, the board is obligated to hear the appeal on the record of the hearing before the commissioner and not to retry the facts. . . . The commissioner has the power and duty, as the trier of fact, to determine the facts. . . . The conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . Our scope of review of the actions of the board is similarly limited. . . . The role of this court is to determine whether the review [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citation omitted; internal quotation marks omitted.) *Sprague* v. *Lindon Tree Service, Inc.*, 80 Conn. App. 670, 673–74, 836 A.2d 1268 (2003).

Because the plaintiffs' claim regarding the applicability of § 31-275 to their situation is a question of law, our review of the board's decision is plenary. See *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 734, 830 A.2d 228 (2003). "It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny." (Internal

quotation marks omitted.) *Stickney* v. *Sunlight Con-struction, Inc.*, 248 Conn. 754, 760, 730 A.2d 630 (1999).

A jurisdictional prerequisite to the applicability of the act is the existence of an employer-employee relationship. *Castro* v. *Viera*, 207 Conn. 420, 433, 541 A.2d 1216 (1988). Section 31-275 (9) (A) (i) of the act defines an employee as someone who "[h]as entered into or works under any contract of service or apprenticeship with an employer, whether the contract contemplated the performance of duties within or without the state . . . ." "Relevant legislation and precedent guide the process of statutory interpretation. [General Statutes § 1-2z] provides that, [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extra-textual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, 278 Conn. 408, 421–22, 898 A.2d 157 (2006). Because the language of § 31-275 (9) (A) (i) is plain and unambiguous and does not yield absurd and unworkable results, we need go no further.

While the act's applicability to this case is one of first impression in our courts, decisions of the board are informative as to whether an employer-employee relationship existed in this case. The plaintiffs rely on *Lemelin* v. *New Britain General Hospital*, 3978 CRB-06-99-02 (February 1, 2000), to support their argument that prospective employees are entitled to workers' compensation benefits. Specifically, they state that in both *Lemelin*, as well as in this case, the claimants "were only prospective employees and not actually hired." The plaintiffs' reliance on *Lemelin* is misplaced. On four separate occasions, the board in *Lemelin* stressed the

fact that the claimant had been offered the job *prior* to taking the hepatitis B vaccination that caused her injury as part of her physical examination. Id., pp. 1–2, 4–5. The claimant in that case had received a letter that made repeated references to her starting date. Id., p. 2. This letter was then followed by a telephone call to the claimant, telling her when she was to "start working." Id. These facts are clear indications that the claimant had in fact been hired.

On the basis of this postoffer status, the *Lemelin* board determined that the act should be construed liberally to provide compensation benefits to the claimant. Id., pp. 5–6. The *Lemelin* board relied on 2 A. Larson & L. Larson, Workers' Compensation Law (1999) § 26.02 [6], which provides that "injury during a try-out period is covered [under the workers' compensation law], when that injury flows directly from employment activities or conditions,"[3] and it found that the physical examination was a condition of employment. *Lemelin* v. *New Britain General Hospital*, supra, No. 3978 CRB-06-99-02, p. 4. In *Lemelin*, the examination alone was insufficient to bring the claimant under the act's protection; the physical examination plus an offer of employment was required.

The plaintiffs also refer to *Netto* v. *Derby*, 4535 CRB-4-02-6 (July 2, 2003). There, a letter from the Derby police chief indicated that the claimant "had been offered a part-time supernumerary job upon completion of his . . . training." Id., p. 5. Further, in his deposition,

---

[3] Section 26.02 [6] of the Larsons' treatise also recognizes that several states have denied workers' compensation benefits to individuals who were injured after taking physical fitness tests. In footnote 16 to § 26.02 [6], the treatise discusses *Dykes* v. *State Accident Ins. Fund*, 47 Or. App. 187, 613 P.2d 1106 (1980). There, the court stated: "Claimant argues that the possibility of future employment constitutes 'remuneration.' This argument is untenable. If this were so, every person who makes application to an employer for a job, fills out an application and takes any kind of test is ipso facto an employee. We cannot accept this." Id., 190.

the police chief stated that the claimant "was actually going to be a supernumerary part-time police officer . . . ." Id., p. 6. The *Netto* board concluded: "One could reasonably infer from this evidence that the claimant was more than an enrolled student or trainee who hoped to obtain employment in the field of his study. Rather, *he had been accepted* as a supernumerary police officer . . . subject to his completion of the requisite training—training that would not have been provided absent this expectation of employment upon qualification." (Emphasis added.) Id. The city of Derby, having offered the claimant the position and having required training as a condition of employment, helped establish the status of the claimant as an employee. *Lemelin* and *Netto* confirm that the postoffer status of the claimant is a necessary element in the determination of eligibility for workers' compensation benefits.

The record before us indicates that the decedent, unlike the claimants in *Lemelin* and *Netto*, had not received an offer of employment at the time he was scheduled to take his physical fitness test. In other words, the decedent performed the test not as an individual with postoffer status, but as a trainee who hoped to obtain employment. See id. We are unable to extend the benefits of the act to individuals who find themselves in the decedent's position. Section § 31-275 (9) (A) (i) specifically provides that an employee is someone who "[h]as entered into or works under any contract of service . . . ." The decedent had not entered into a contract of service with the state. At a bare minimum, an offer of employment by an employer, *followed by* performance by the prospective employee, would be necessary to conclude that the parties have entered into a contract of service.[4] In essence, the plaintiffs are asking this court to make a policy determination

---

[4] Other states have reached similar conclusions. See, e.g., *Standring* v. *Skowhegan*, 870 A.2d 128, 130 (Me. 2005) ("job applicant who has no employment relationship with an employer, and is injured in the course of applying

that injuries suffered by job applicants who have not satisfied this statutory requirement are still compensable under the act. This we cannot do. "Because of the statutory nature of our workers' compensation system, policy determinations as to what injuries are compensable and what jurisdictional limitations apply thereto are for the legislature, not the judiciary or the board, to make." (Internal quotation marks omitted.) *Slickney* v. *Sunlight Construction, Inc.*, supra, 248 Conn. 761.

Here, the commissioner found, inter alia, that "[s]uccessful completion of the entire application and training process was required *prior to appointment* to a correction officer position." (Emphasis added.) The commissioner ultimately concluded on the basis of the evidence in the record that the plaintiffs did not meet their burden of proof that the decedent was an employee pursuant to § 31-275 (9) (A) (i) and that subject matter jurisdiction was therefore lacking to permit adjudication of the

for a job, is not eligible for payment of workers' compensation benefits as an employee"); *Leslie* v. *School Services & Leasing, Inc.*, 947 S.W.2d 97, 100–101 (Mo. App. 1997) ("job applicant engaged in pre-employment training is not an employee" because "the employer/employee relationship requires more than participation in the application process"); *Boyd* v. *Montgomery*, 515 So. 2d 6, 7 (Ala. App. 1987) ("benefit [defendant] received from [plaintiff's] taking an agility test does not rise to the level where a contract of employment can be imputed").

Both *Lemelin* and § 26.02 [6] of the Larsons' treatise refer to *Laeng* v. *Workmen's Compensation Appeals Board*, 6 Cal. 3d 771, 783, 494 P.2d 1, 100 Cal. Rptr. 377 (1972) (California Supreme Court applied "special risks test" to support proposition that individuals not actually hired may be entitled to benefits if they suffered injury as result of performing "arduous and potentially hazardous tasks prescribed by the employer").

The plaintiffs seek to apply California's special risks test here. Connecticut uses, however, an employer-employee relationship test in the workers' compensation context, as opposed to the special risks test used in California. Also, it is significant that the *Lemelin* board refers to *Laeng* only in emphasizing the fact that the claimant in *Lemelin* had received a job offer *before* she was injured and not to support use of California's special risks test. *Lemelin* v. *New Britain General Hospital*, supra, No. 3978 CRB-06-99-02, p. 4. Therefore, any usefulness *Laeng* may have as persuasive authority is quite limited.

plaintiffs' claims for dependency benefits. We conclude that the board's decision upholding the commissioner's finding and dismissal for lack of subject matter jurisdiction did not result from an incorrect application of the law to the facts of this case.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.