******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## THE GROTTO, INC. *v.* LIBERTY MUTUAL
## INSURANCE COMPANY
### (AC 46589)

Bright, C. J., and Alvord and DiPentima, Js.

*Syllabus*

The plaintiff sought to recover damages for, inter alia, alleged negligent
misrepresentation by the defendant insurance company related to a
workers' compensation insurance policy. The defendant issued the plain-
tiff a policy in September, 2015. In October, 2015, the defendant issued
a cancellation notice of the policy with an effective cancellation date
of November 3, 2015. After the November 3 date had passed, the defen-
dant sent multiple letters to the plaintiff, some of which indicated that
the policy may be cancelled and others of which indicated that the
policy had been cancelled. An employee of the plaintiff, L, suffered a
compensable injury in May, 2016, and filed a workers' compensation
claim, and the defendant denied coverage on the basis that the policy
had been cancelled on November 3, 2015. In 2019, following a formal
hearing, a workers' compensation commissioner concluded that the
policy was still in effect on the date of L's injury. The defendant appealed
to the Compensation Review Board, which reversed the commissioner's
decision. The plaintiff appealed the board's decision to this court, which
affirmed the decision. Thereafter, the plaintiff brought the present case
relating to the defendant's conduct after the cancellation of the policy.
The trial court granted the defendant's motion for summary judgment,
concluding that the plaintiff's action was barred by the doctrine of res
judicata. On the plaintiff's appeal to this court, *held* that the trial court
improperly rendered summary judgment for the defendant: the doctrine
of res judicata did not bar the plaintiff's claims, which related to the
defendant's conduct following the cancellation of the policy and, thus,
did not fall within the scope of the Workers' Compensation Act (§ 31-
275 et seq.) and could not have been litigated before the commissioner,
whose limited jurisdiction did not extend to those claims; accordingly,
this court reversed the judgment of the trial court and remanded the
case for further proceedings.

Argued May 22—officially released August 13, 2024

*Procedural History*

Action to recover damages for, inter alia, the defen-
dant's alleged negligent misrepresentation, and for
other relief, brought to the Superior Court in the judicial
district of Waterbury, where the court, *D'Andrea, J.*,

granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *judgment directed*; *further proceedings*.

*James P. Brennan*, for the appellant (plaintiff).

*Philip T. Newbury, Jr.*, for the appellee (defendant).

*Opinion*

DiPENTIMA, J. The plaintiff employer, The Grotto, Inc. (Grotto), appeals from the summary judgment rendered by the trial court in favor of the defendant insurer, Liberty Mutual Insurance Company (Liberty Mutual). On appeal, Grotto claims that the court improperly concluded that the doctrine of res judicata barred the present action. We agree and, accordingly, reverse the judgment of the trial court.

We rely on the following undisputed facts in our analysis and resolution of the claims on appeal. In September, 2015, Grotto and Liberty Mutual entered into a contract for workers' compensation insurance and Liberty Mutual issued a workers' compensation insurance policy (policy) to Grotto that was scheduled to expire on August 20, 2016. On October 13, 2015, Liberty Mutual issued a cancellation notice with an effective date of November 3, 2015, as required by General Statutes § 31-348,[1] for Grotto's failure to provide certain self-audit materials. Liberty Mutual filed the cancellation

---

[1] General Statutes § 31-348 provides in relevant part: "Every insurance company writing compensation insurance or its duly appointed agent shall report in writing or by other means to the chairperson of the Workers' Compensation Commission, in accordance with rules prescribed by the chairperson, the name of the person or corporation insured, including the state, the day on which the policy becomes effective and the date of its expiration, which report shall be made within fifteen days from the date of the policy. The cancellation of any policy so written and reported shall not become effective until fifteen days after notice of such cancellation has been filed with the chairman. . . ."

notice electronically with the National Council on Compensation Insurance (NCCI). After the November 3, 2015 cancellation date had passed, Liberty Mutual sent letters to Grotto, some of which indicated that the policy "may" be cancelled if audit materials were not promptly received and others that indicated that the policy had been cancelled effective November 3, 2015.

On March 1, 2016, Laurel B. Bellerive, an employee of Grotto, suffered a traumatic injury to her right hand, which injury arose out of and in the course of her employment with Grotto. Bellerive filed a workers' compensation claim against Grotto, and Liberty Mutual denied coverage on the basis that the policy had been cancelled on November 3, 2015.

On May 24, 2019, following a formal hearing, the Workers' Compensation Commissioner for the Fifth District (commissioner)[2] found that the cancellation notice was ineffective and that the policy was in effect at the time of Bellerive's injury. Liberty Mutual appealed to the Compensation Review Board (board) and, on June 10, 2020, the board reversed the commissioner's decision. The board determined that, although there was sufficient evidence to support the commissioner's conclusion that Grotto reasonably believed the policy was still in effect as late as March, 2016, the commissioner had erred in determining that the policy was still in effect on March 1, 2016. The board noted that the

---

[2] General Statutes § 31-275d (a) (1), effective as of October 1, 2021, provides in relevant part that, "[w]henever the words 'workers' compensation commissioner,' 'compensation commissioner,' or 'commissioner' are used to denote a workers' compensation commissioner in [several enumerated] sections of the general statutes, [including sections contained in the Workers' Compensation Act, General Statutes § 31-275 et seq.] the words 'administrative law judge' shall be substituted in lieu thereof . . . ."

As all events underlying this appeal occurred prior to October 1, 2021, we will refer to the workers' compensation commissioner who found that the policy was in effect at the time of Bellerive's injury as the commissioner.

commissioner wrongly concluded that (1) the cancellation was ineffective because it was not served by certified mail and, therefore, it did not comply with the relevant statutory requirements and (2) the commissioner was free to look beyond the NCCI filings to evidence that showed that the policy remained in force because Liberty Mutual had sent inconsistent communications to Grotto, which caused it to believe the policy was still in place. In addressing these erroneous conclusions, the board first determined that reporting insurance cancellation to the electronic reporting system of the NCCI was sufficient to satisfy the requirements of General Statutes (Rev. to 2015) § 31-321.[3] The board further noted that "§ 31-348 provides that the insurer must give written notice to the commission (in this case through NCCI), and that cancellation will be effective fifteen days after it is filed with the chair[person] of the commission" and further stated that, "beyond filing such a notice, there are no other requirements to effectuate cancellation" and that the employer's subjective belief regarding cancellation is immaterial. The board stated that the only proper time period for the commissioner to consider the communications between Liberty Mutual and Grotto following the notice of cancellation was within fifteen days of the notice. Because Liberty Mutual did not rescind the cancellation nor were there any communications between Liberty Mutual and Grotto during that time frame, the policy was cancelled effective November 3, 2015.

Grotto appealed the board's decision to the Appellate Court. *Bellerive* v. *Grotto*, *Inc.*, 206 Conn. App. 702, 260

---

[3] General Statutes (Rev. to 2015) § 31-321 provides in relevant part: "Unless otherwise specifically provided, or unless the circumstances of the case or the rules of the commission direct otherwise, any notice required under this chapter to be served upon an employer, employee or commissioner shall be by written or printed notice, service personally or by registered or certified mail addressed to the person upon whom it is to be served at the person's last-known residence or place of business. . . ."

All references herein to § 31-321 are to the 2015 revision of the statute.

A.3d 1228, cert. denied, 339 Conn. 908, 260 A.3d 483 (2021). In affirming the decision of the board, this court reasoned that, "[b]ecause Liberty [Mutual] was not required to notify Grotto before cancelling its workers' compensation policy, the only pertinent issue with respect to the effectiveness of Liberty [Mutual's] cancellation is whether Liberty [Mutual's] electronic notice to the NCCI pursuant to § 31-348 was sufficient in light of the requirements of § 31-321. We conclude that Liberty [Mutual's] electronic notice to the NCCI was sufficient." Id., 708. This court rejected Grotto's argument that the commissioner had authority to decide the common-law issues including negligence and misrepresentation that Grotto claimed supported the commissioner's finding that the policy was in effect on March 1, 2016. Id., 709. In rejecting Grotto's argument, this court reasoned that, because the policy "was cancelled effectively prior to the date of loss, and because an employer's understanding as to when coverage terminated is largely irrelevant . . . common-law theories cannot support a finding that coverage was in place on the date of loss under the facts of this case. . . . [W]e are not persuaded that the allegedly inconsistent letters sent by Liberty [Mutual] in the months following the notice of cancellation could support a conclusion that the coverage under the policy actually did continue, notwithstanding the November cancellation notice." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 709–11. This court noted that it was not necessary to determine whether the commissioner had jurisdiction to determine common-law issues. Id., 709 n.7.

In October, 2017, Grotto commenced the present action. In its four count complaint, Grotto alleged negligent misrepresentation, negligence, violation of the Connecticut Unfair Insurance Practices Act (CUIPA), General Statutes § 38a-815 et seq., and violation of the

Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Liberty Mutual filed a motion for summary judgment, arguing that the doctrine of res judicata bars relitigation of whether the policy was effectively cancelled prior to the date of Bellerive's injury. Grotto filed an opposition arguing that the cancellation of the policy was not at issue in the complaint, but, rather, at issue was Liberty Mutual's conduct after the cancellation of the policy.

In rendering summary judgment in favor of the defendant, the court concluded that the present action was barred by the doctrine of res judicata. This appeal followed.

We begin with the relevant law and standard of review. "Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 535, 51 A.3d 367 (2012). "[S]ummary judgment [is an] appropriate method for resolving a claim of res judicata." *Jackson* v. *R. G. Whipple, Inc.*, 225 Conn. 705, 712, 627 A.2d 374 (1993).

"[T]he doctrine of res judicata, or claim preclusion, [provides that] a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same parties or those in privity

with them] on the same claim. A judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose. . . . The rule of claim preclusion prevents reassertion of the same claim regardless of what additional or different evidence or legal theories might be advanced in support of it. . . . In order for res judicata to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." (Emphasis omitted; internal quotation marks omitted.) *Girolametti* v. *Michael Horton Associates, Inc.*, 332 Conn. 67, 75, 208 A.3d 1223 (2019).

Grotto argues on appeal that the third and fourth elements of res judicata were not satisfied, but we need only focus on the third element—that is, an adequate opportunity to litigate the matter fully. The narrow issue before the commissioner and the board was whether the policy had been cancelled pursuant to the relevant statutes prior to the date of Bellerive's injury.[4] The board noted that, although the conflicting letters from Liberty Mutual to Grotto following the effective date of the cancellation may have led Grotto to believe that the coverage was still in place, those letters could not support a conclusion that the coverage continued because, pursuant to *Yelunin* v. *Royal Ride Transportation*, 121 Conn. App. 144, 994 A.2d 305 (2010), Grotto's

[4] In determining that res judicata applied to bar Grotto's claims, the court noted that "Grotto points to the case before the commissioner and the [board]. The proper comparison should be to this second action and the previous matter before the Appellate Court as action one, and the issues that were raised and decided in that forum." We disagree with this approach and note that the appeal to this court from the board's ruling was restricted to the issues and record before the board.

subjective belief is immaterial.[5] The board further stated that "[t]he sole question before the commissioner was whether the policy's coverage remained in force after the November, 2015 cancellation" and that, in deciding that question, the board looked to whether there was evidence, within the statutory fifteen day period following the notice of cancellation, that Liberty Mutual intended to continue coverage. The board further noted that "[w]hether Liberty [Mutual] was justified in cancelling its policy, or whether it breached its contract with Grotto by doing so, are questions that must be determined in another forum. If the cancellation was legally completed and there had not been a reinstatement of this policy (be it documented with NCCI or not), our commission lacks the ability to adjudicate these disputes." Accordingly, the board made clear that the narrow issue before it was whether the policy was cancelled effectively pursuant to §§ 31-321 and 31-348. It did not consider any causes of action related to Liberty Mutual's conduct following the effective date of the cancellation.

Although the board did not consider the claims raised by Grotto in its complaint in the present action, that does not end our analysis. "Res judicata bars the relitigation of claims actually made in the prior action as well as any claims that might have been made there. . . . Public policy supports the principle that a party should not be allowed to relitigate a matter which it

---

[5] In *Yelunin* v. *Royal Ride Transportation*, supra, 121 Conn. App. 144, this court stated that the "[c]ancellation of a workers' compensation insurance policy occurs in accordance with § 31-348" and held that "[t]he only precondition to effective cancellation contained in § 31-348 is that an insurer provide notification to the chair[person] of the workers' compensation commission. . . . Indeed, § 31-348 has been interpreted as protecting employees or anyone examining coverage records in the commissioner's office. In that regard, an employer's understanding as to when coverage terminated is largely irrelevant . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 149.

already has had an opportunity to litigate." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Wheeler* v. *Beachcroft, LLC*, 320 Conn. 146, 157, 129 A.3d 677 (2016).

Grotto could not have litigated its claims of negligent misrepresentation, negligence, and violations of CUTPA and CUIPA because the commissioner's limited jurisdiction does not extend to those claims. "The primary statutory provision establishing the subject matter jurisdiction of the commissioner is General Statutes . . . § 31-278. [That statute] provides in relevant part that each commissioner shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of [the Workers' Compensation Act (act), General Statutes § 31-275 et seq.]. . . . [Each commissioner] shall have jurisdiction of all claims and questions arising . . . under [the act] . . . . Administrative agencies are tribunals of limited jurisdiction and their jurisdiction is dependent entirely upon the validity of the statutes vesting them with power and they cannot confer jurisdiction upon themselves. . . . Long ago, we said that the jurisdiction of the [workers' compensation] commissioners is confined by the [a]ct and limited by its provisions. Unless the [a]ct gives the [c]ommissioner the right to take jurisdiction over a claim, it cannot be conferred upon [the commissioner] by the parties either by agreement, waiver or conduct. . . . The authority given by the legislature is carefully circumscribed and jurisdiction under the act is clearly defined and limited to what are clearly the legislative concerns in this remedial statute. . . . A commissioner may exercise jurisdiction to hear a claim only under the precise circumstances and in the manner particularly prescribed by the enabling legislation. . . . Because of the statutory nature of our workers' compensation system, policy determinations as to what injuries are compensable and what jurisdictional limitations apply

thereto are for the legislature, not the judiciary or the board, to make." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Del Toro* v. *Stamford*, 270 Conn. 532, 540–42, 853 A.2d 95 (2004).

"[C]ompensability, in terms of whether a type of injury falls within the scope of the act, is a jurisdictional fact . . . . Consequently, if a claimed injury does not fall within one of the compensable personal injury categories under the act, then the commissioner does not have jurisdiction over the claim." Id., 547. "Because of the statutory nature of our workers' compensation system, policy determinations as to what injuries are compensable and what jurisdictional limitations apply thereto are for the legislature, not the judiciary or the board, to make." (Internal quotation marks omitted.) *Stickney* v. *Sunlight Construction, Inc.*, 248 Conn. 754, 761, 730 A.2d 630 (1999).

In the present action, Grotto claims: (1) Liberty Mutual knew or should have known that the letters sent to Grotto following the notice of cancellation were false and that those false representations induced Grotto to believe the policy was still in effect on the date of Bellerive's injury (negligent misrepresentation); (2) Liberty Mutual negligently sent conflicting notices following the notice of cancellation that resulted in Grotto being liable for Bellerive's workers' compensation claim (negligence); (3) Liberty Mutual misrepresented the condition and/or terms of the policy thereby inducing Grotto to take no further action so that the policy would lapse (CUIPA); and (4) Liberty Mutual's aforementioned conduct violated CUTPA.

None of the claims raised by Grotto in its complaint falls within the scope of the act. "The act authorizes the commissioner to award workers' compensation benefits only for personal injuries. . . . Section 31-275 (16) defines the term personal injury as follows: (A) Personal injury or injury includes, in addition to accidental injury which may be definitely located as to the

time when and the place where the accident occurred, an injury to an employee which is causally connected with [the employee's] employment and is the direct result of repetitive trauma or repetitive acts incident to such employment, and occupational disease. . . . Accordingly, an injury that does not fall within the definition of personal injury, as defined by § 31-275 (16), is not compensable under the act." (Citation omitted; internal quotation marks omitted.) *Del Toro* v. *Stamford*, supra, 270 Conn. 545.

The injuries claimed in this action relate to Liberty Mutual's conduct following the cancellation of the policy. Those claims do not allege a personal injury compensable under the act and they differ from traditional claims adjudicated under the act because they involve questions of misrepresentations and negligence by an insurance provider as to the employer, the resolution of which requires the application of laws that are not part of the act. See *Stickney* v. *Sunlight Construction, Inc.*, supra, 248 Conn. 762 (act did not establish jurisdiction over contract claim concerning insurance coverage, or, "[p]ut more generally, resolving the central issue in the motion requires application of laws other than the provisions of the act"). Accordingly, the commissioner had no jurisdiction to address Grotto's common-law claims.

The trial court stated that *Powell* v. *Infinity Ins. Co.*, 282 Conn. 594, 922 A.2d 1073 (2007), provided it with "clear guidance" as to the "proper outcome" of Liberty Mutual's motion for summary judgment. In *Powell*, our Supreme Court held that res judicata barred the insured/ plaintiffs' claims of bad faith, breach of contract and violations of CUTPA/CUIPA because those claims grew out of the same transaction or nucleus of facts implicated in the prior contract action for uninsured motorist benefits. *Powell* v. *Infinity Ins. Co.*, supra, 596. The present case is strikingly dissimilar to *Powell*, however,

in that *Powell* involved two actions brought in the Superior Court, whereas the present case concerns an action brought in the Superior Court and an action brought before the Workers' Compensation Commission. Our Supreme Court in *Powell* stated that "[t]he doctrines of preclusion . . . should be flexible and must give way when their mechanical application would frustrate other social policies based on values equally or more important than the convenience afforded by finality in legal controversies. . . . Accordingly, on occasion, we have recognized exceptions to the general policy favoring application of the doctrines of res judicata and collateral estoppel. In establishing exceptions to the general application of the preclusion doctrines, we have identified several factors to consider, including . . . whether the opportunity to litigate the claim or issue differs as between the two forums . . . ." (Citations omitted; internal quotation marks omitted.) Id., 602–603. Here, Grotto was unable to litigate its claims of negligent misrepresentation, negligence and CUTPA/CUIPA violations before the commission and the board. As such, res judicata does not apply to bar those claims in the Superior Court. See id.; see also *Connecticut Natural Gas Corp.* v. *Miller*, 239 Conn. 313, 323, 684 A.2d 1173 (1996) (doctrine of res judicata does not apply to preclude defendants' counterclaims in second action when prior statutory hearing severely limited opportunity to present evidence in support of counterclaims, rendering defendants unable to fully litigate them in that forum without violating statute). For the foregoing reasons, the court incorrectly concluded that res judicata bars the present action. Accordingly, it improperly rendered summary judgment in favor of Liberty Mutual.

The judgment is reversed and the case is remanded with direction to render judgment denying the defendant's motion for summary judgment and for further proceedings according to law.

In this opinion the other judges concurred.